DANIEL D. WILMOT, *by his next friend,* v. WM. H. M. HOWARD.

## *Practice. Liability of Surgeons.*

A party is not entitled to an exception to a refusal of the court to charge the jury in accordance with a request made after the charge was given, where the court had already given instructions conformable to the views taken by the counsel of the party in the argument, and where the request asked the court to repudiate those views and give different instructions.

There is an implied obligation on a man holding himself out to the community as a surgeon, and practising that profession, that he should possess the ordinary skill in surgery of the profession generally.

Where by improper treatment of an injury by a surgeon, the patient must inevitably have a defective arm, the surgeon is liable to action, even though the mismanagement or negligence of those having the care of the patient, may have aggravated the case and rendered the ultimate condition of the arm worse than it otherwise would have been.

The liability of the surgeon being established, the showing of such mismanagement or negligence only affects the measure and amount of damages.

This case distinguished from those where the contributory negligence on the part of the patient entered into the creation of the cause of action, and not merely supervened upon it, by way of aggravating the damaging results.

The plaintiff broke his arm and called upon the defendant, a professed surgeon, to set it, which he did, but the evidence showed that by the improper manner of dressing the arm and subsequent negligence of the defendant, the plaintiff must necessarily have a defective arm, irrespective of the management of those having the care of the plaintiff. *Held,* that the defendant was not entitled to have the court charge the jury that, if the damage or injury to the plaintiff's arm resulted *in part* from the mismanagement and negligence of those having the care and management of the plaintiff, the plaintiff could not recover, the court having given a full and satisfactory charge upon every other feature and theory of the defence.

THIS was an action on the case against the defendant for damages occasioned to the plaintiff by the want of skill of the defendant as a surgeon, in setting the plaintiff's arm, and for negligence and inattention to the same after it was set.

Plea, the general issue, and trial by jury, June Term, 1866.

The plaintiff is the minor son of the *next friend,* Daniel C. Wilmot, and was, at the time of the injury complained of, about seven years of age, and resided with his father.

The counsel for the plaintiff introduced evidence tending to show, that about the 9th of June, 1863, the plaintiff fell and broke one of the bones of the forearm, and that the father of the boy took him to the defendant's to have his arm set, and otherwise dressed and attended to ; that the defendant, who professed to be a surgeon, undertook to set and take charge of the fractured arm ; that he did set it, but that in doing so, and in dressing the arm, he did not use ordinary skill, and that by reason of an improper bandage, and putting on the bandage too tight, it caused pain and suffering to the plaintiff, and mortification, decay, and the entire loss of the use of the arm.   There was evidence tending to show, that when the defendant set the arm, he dressed it by first winding a bandage around the arm very tight, from near the hand to very near, or quite to the elbow, then put on the splints outside of this, then another bandage wound around the arm tight from near the hand to the elbow, over the splints ; and the testimony of several practising surgeons, whose testimony tended to show that an inner bandage was improper, unnecessary, and detrimental, and that in the tight manner this was put and kept on, in their opinion it caused the arm to perish and mortify.   The plaintiff's counsel further gave evidence tending to prove, that as the father was about to leave the office of the defendant, it was, at the defendant's suggestion, agreed and arranged by them—this being Wednesday—that on the succeeding Sunday, the father of the boy should take him to the office of the defendant to have the arm dressed or whatever else its condition should require ; that immediately after the arm was set, it became and continued very painful, on account of the improper and unskillful bandage, and dressing ; that on Friday following, the defendant was passing by the house of the father of the boy, when the father called the defendant in to see the arm ; and that he then informed him that the bandage was too tight, and that it caused great pain to the arm, and that it had done so ever since he set it ; that the boy had been in great distress and complained of the bandage being too tight, and of great pain in his arm, and called the defendant's attention to the fact that the hand of the broken arm was swollen and blistered on the fingers. The evidence tended to show the hand had become purple, and that

the defendant said he would not undo the arm; that he then called his attention to one of the splints being up so high as to interfere with the arm at the elbow, and that the defendant, thereupon, unbound the outer bandage far enough to slip down the inner splint, so it would not prevent bending the elbow, and put on the bandage again as it was before, after thus adjusting the splint on the inside of the arm.

The plaintiff further gave testimony tending to prove that the defendant then told the plaintiff he need not fetch the boy to his office at all, and agreed to call and see the arm the then next Monday or Tuesday at said Wilmot's; that on the following Tuesday the defendant passed by the house of the plaintiff and did not call, and never after that called upon or saw the arm.

The defendant gave testimony tending to prove that on the Friday when the father of the plaintiff called the defendant in to see the arm, it was agreed that the father of the plaintiff, on the succeeding Sunday, should take the plaintiff to the defendant's office to have his arm dressed if it needed dressing, and that the defendant did not agree to call at the house of the father of the plaintiff.

And the defendant further introduced testimony tending to prove, that on several occasions, one of which was on the next Sunday succeeding said Friday, the father of the plaintiff, not in the presence of the defendant, told individuals that he had agreed to take the plaintiff to the defendant's office on the next Sunday after the said Friday to have the arm examined and dressed if it needed dressing. Wilmot testified that he never made any such statement, but admitted that he had stated, on one or two occasions, that at the time the defendant first set the arm, it was understood he was to take the boy to the defendant's office the next Saturday or Sunday after it was first set by the defendant. It was admitted on the part of the plaintiff that the plaintiff was not taken to the defendant's office, as the defendant claimed the agreement was, and that the defendant was not called upon or requested, after said Friday to attend upon the plaintiff, and that the defendant never did see or attend upon the arm after that time.

The testimony on the part of the plaintiff tended to prove, that the

arm was not well and properly dressed, and that the plaintiff has lost the use of his arm by reason of the want of proper skill in setting the same, on the part of the defendant, and by reason of negligence and inattention to the same, on the defendant's part, after it was set.

The defendant's testimony tended to prove that the plaintiff's arm was well and skillfully dressed and set, and that the loss of the use of the arm resulted from the peculiar injury of the same, at the time it was broken, and from the fault and negligence of the father of the plaintiff in not bringing the plaintiff to the office to be dressed and attended to as he had agreed to do, and from other want of proper care and attention.

There was other evidence as to what was said and done and agreed upon when the defendant came into the father's house on Friday to see the arm, upon the part of both parties; also as to the effect of the defendant's treatment, the injury to the arm on account of the manner of dressing, negligence, etc., of the defendant, and the treatment by other surgeons.

The counsel for the defendant claimed to the jury in argument that if the damage to the arm resulted in whole or in part from the mismanagement and negligence of those having the care and management of the plaintiff, that the plaintiff is not entitled to recover; and stated to the jury that he presumed the court would so charge. The court treated this as properly raising and presenting the question. The court did not so charge.

No other requests were made by the defendant's counsel.

The court charged the jury fully upon all points presented by the evidence, and no exceptions were taken to any neglect or omission to charge, or to the charge as given, except as heretofore stated. In the course of the charge the court told the jury that there was an implied obligation on a man, who holds himself out to a community as a surgeon, and practising that profession, that he should possess the proper skill in surgery, that is, not the highest degree of skill, that by study and experience the profession is susceptible of, or that is possessed by the most eminent surgeons, but the ordinary skill of the profession generally, such degree of knowledge and skill as surgeons commonly possess, such as is common among

surgeons who practice that profession; but that the want of such skill would not make the surgeon liable, unless it was also shown that the injury complained of resulted from and was caused by the want of such skill as a surgeon is required to possess.

The defendant's counsel excepted to this charge, so far as it relates to the degree of knowledge and skill a surgeon should possess.

As to the declarations of Daniel C. Wilmot, which the defendant claimed to have proved, to the effect that he, Wilmot, had agreed on that Friday to take the boy to the defendant's office the next Sunday thereafter, no request was made to charge in relation to the evidence as to such declarations, but both of the counsel who argued the case for the defendant, stated to the jury that they did not claim that such declarations were evidence in chief to prove the fact of such agreement, but that they were evidence tending to discredit and impeach Daniel C. Wilmot, and the case was so argued to the jury on both sides, *and the court so charged the jury.* After the court had charged the jury, the defendant's counsel excepted to the charge on this point, claiming then that such subsequent declarations of Daniel C. Wilmot were evidence in chief. The court then informed the defendant's counsel that the charge was as they claimed in their argument to the jury, but that the court would state in the exceptions the facts, so that the supreme court might decide whether under such circumstances they were entitled to have their exceptions allowed, and if so, the error, if any, might be corrected by the supreme court. The facts were stated for that purpose.

As to what the defendant's counsel claimed, as heretofore stated, as to the effect of mismanagement, negligence, or want of proper care and attention on the part of the plaintiff, and those, other than the defendant, having the care and management of him, the court charged the jury, as to this branch of the case, and its effect on the rights of the parties and upon the damages to the satisfaction of the defendant, and so that no exception was taken, except the court did not charge that if the damage or injury resulted, *in part*, from the mismanagement and negligence of those having the care and management of the plaintiff, that the plaintiff could not recover,—and for the omission so to charge the defendant excepted.

The jury returned a verdict for the plaintiff.

*Wm. Hebard* and *Washburn & Marsh*, for the defendant.

The negligence of those having the care, charge and custody of the plaintiff was not merely *permissive*, like permitting, negligently, a child to play in the public highway, or otherwise be in the way of danger; but is active, affirmative negligence.

In a case of mere permissive negligence,—permitting a child to be improperly in the highway,—it was held in *Robinson* v. *Cone*, 22 Vt. 213, that if the child were injured by the negligence of the defendant, he would not be precluded from his redress; that if the defendant knew the child was in the highway, he was bound to exercise proportionate watchfulness and the utmost care. That case was decided mainly upon the authority of the case of *Lynch* v. *Nurdin*, 1 Ad. & El., N. S., 28, (41 E. C. L., 422,) in which a similar decision had been made. And the similar decision in *Birge* v. *Gardiner*, 19 Conn. 507, was also made upon the authority of *Lynch* v. *Nurdin*, and upon the authority of these two cases, and upon a like state of facts, the same decision has since been made in Connecticut in the case of *Daley* v. *Norwich & Worcester R. R. Co.*, 26 Conn. 91.

But the case of *Robinson* v. *Cone*, is opposed to the decision in *Hartfield* v. *Roper*, 21 Wend. 614, and to the decision in *Wright* v. *Malden & Melrose R. R. Co.*, 4 Allen, 283, in both of which negligence on the part of the parents in allowing the child to be in the way of danger, was held to preclude the recovery by the child of damages for injury received.

And the case of *Lynch* v. *Nurdin*, has been questioned in *Lygo* v. *Newbold*, 9 Exch. 502; S. C. 24 Eng. L. & Eq. 507.

But the negligence on the part of the parents in the case at bar is, in its character and consequences, entirely different from the permissive negligence of parents, who allow their child to be in the way of danger; and therefore the cases cited above do not control the decision in this case. Here the parents knew the danger of the child and had the means of preventing the injury, and neglected to use them, and permitted the child to remain in danger, and were also, as the testimony tended to prove, guilty of positive mismanagement in the care of the child.

The case, in its facts, is like the case of *Holly* v. *Boston Gas Light Co.*, 8 Gray, 123.

The distinction between the two classes of cases is the difference between permitting a child to be in the way of danger, and permitting a child, known to be in danger, to remain in danger.

And there is this further difference between the case of *Robinson v. Cone*, and the case at bar; in *Robinson* v. *Cone* the injury to the plaintiff was the result of direct force, exercised and controlled by the defendant; and the reasoning of the court was directed to and upon that state of facts; while, in this case, the negligence on the part of the defendant, if any, consisted in the omission of any affirmative act, and the child was all the time in the care and under the control of its parents.

*C. W. Clarke*, for the plaintiff.

I. The objection of the defendant that the sayings of the *prochien ami* ought to have been received and considered as testimony in chief, is not well taken. *Vaughan* v. *Porter*, 16 Vt. 266.

II. The charge of the court as to the degree of knowledge and skill in his profession a surgeon is required to possess, was correct. *Patten* v. *Wiggin*, Am. Law Reg. 401; 1 Hilliard on Torts, 253.

III. The court did not err in omitting to charge the jury that, "if the injuries resulted in whole or in part from the mismanagement of those having the care and management of the plaintiff, the plaintiff could not recover."

1. Even if that be the law applicable to cases of this sort, the defendant was not, under the circumstances of this case, entitled to that charge.

The defence set up was:—1st. That the arm was well and skillfully set and dressed. 2d. That the loss of the arm resulted from the peculiar nature of the injury, and from the fault and negligence of the father in not bringing the plaintiff to the defendant's office, to be dressed and attended as he agreed to do, and from other want of proper care and attention.

What evidence was given tending to show want of proper care and attention other than that tending to show that the plaintiff was to be taken to the defendant's office to be treated, which was

neglected, the exceptions do not state, but we are to conclude that whatever might have fallen out of that character was disposed of in the course of the charge in connection with the whole evidence to the satisfaction of the defendant, so that the court below considered it of no importance to state. We are to presume that the charge was correct, and sufficiently comprehensive, and that what evidence there might have been tending to show want of care, was properly disposed of by specific directions, as was the evidence in relation to the plaintiff's being carried to the defendant's office.

2. The exception is not properly before the court. There was no request made that the court would charge in a particular way, and so no refusal. The exception is only to an *omission* to charge. It is not sufficient that the counsel shall say in the course of argument to the jury that he presumes the court will charge in a particular manner.

3. But the proposition is not sound law, to the extent claimed, and so the court was not bound to notice it. *Vaughn* v. *Porter*, 16 Vt. 266.

The opinion of the court was delivered by

BARRETT, J.    In this action the plaintiff claims to recover damages for injury sustained by reason of the unskillful and negligent manner in which the defendant dressed, treated and attended the plaintiff's fractured arm.

A question is made as to the instructions given to the jury touching certain sayings of the plaintiff's father. Those sayings had been treated by counsel on both sides, in the argument to the jury, as bearing only on the credit of said father as a witness testifying for the plaintiff to material facts in the case. The court, in the charge, had given instructions conformable to the views taken by counsel in the argument. No prior request had been made to the court on this subject. After the charge had been given, the defendants counsel requested the court to instruct the jury that said sayings of the father were to be regarded and considered as evidence in chief. These facts are certified to this court for the purpose of hav-

ing us decide whether the defendant was entitled to exception on this point. In the opinion of this court the defendant was not entitled to exception.

If the defendant claimed any special force, or character, or application, for this evidence, he should have made it known before the close of the argument. On the general subject we adhere to the rule pronounced in *Vaughan* v. *Porter*, 16 Vt. 266, and reasserted in *Cady* v. *Owen*, by POLAND, Ch. J., 34 Vt. 598. But the present case goes beyond those cited, and asks the court, in favor of the party, to repudiate the character and application which he has claimed for the evidence in his argument to the jury, upon which character and application the counsel for the other side, concurring with his opponent, has also argued the case to the jury, and requires the court to put the evidence to the jury, in a new character, in a new application, and to lead to entirely different results from that claimed for it in the argument. This certainly is a novelty in practice. It is understood to be the object of an argument, among other things, to apprise the court of the views and reasons of counsel as to the evidence, as it stands related to the legal propositions involved in the case, and to apprise the opposing counsel of the same things and enable them to present their views and reasons to meet those of the other side ; and still further is it an important and leading object of the argument to bring to the consideration of the jury the various elements and features of the evidence as bearing upon the various propositions of fact which the jury are to pass upon, and aid them in arriving at just results from the evidence as to those propositions.

The course proposed and pursued by the defendant's counsel in this case would thwart all these purposes and objects ; and not only so, but would directly tend to embarrass the court, mislead opposing counsel, and confuse and confound the jury.

We therefore put our decision of this point solely on the ground that the defendant was not entitled to the exception, without considering whether the view embodied in his unseasonable request was correct or not. We think the court did not err in disregarding the request.

The point made in the exceptions upon the part of the charge that

related to the skill required of a person holding himself out and undertaking to practice as a surgeon, we have no occasion to take time with, as it is not really insisted on and urged in this court. We remark, however, that, taken in its relation to the declaration and the evidence, it would seem to be entirely proper, and as favorable as counsel could claim for their client, unless they would have him take refuge in the character of a quack from the consequences of his practice as a *professed* surgeon.

The most important feature of the case is presented by the exception to the omission of the court to charge, "that if the damage or injury to the plaintiff's arm resulted *in part* from the mismanagement and negligence of those having the care and management of the plaintiff, that the plaintiff could not recover."

The court had given a full and satisfactory charge upon every other feature and theory of the defence, and, of course, had told the jury that, if the defendant had exercised the requisite skill, care and attention in dressing, and treating, and attending to the fracture, he would not be liable ; and, also, that if the damage or injury resulted wholly from the fault of those in charge of the plaintiff the defendant would not be liable. Upon the case as situated under these points and features of the charge, the request not complied with assumes, and was made upon the assumption, that the jury should find that the damage and injury was caused, *in part*, by the unskillfulness and negligence of the defendant; and upon the assumption, that the defendant would be liable, unless the putting of that point to the jury in the terms of the request would shield him. Every other theory and ground of defence was made available to him by the charge as given, and he was found liable notwithstanding. The point therefore is this, whether, if the failure of the plaintiff to get a sound arm resulted, *in any part*, from the mismanagement and negligence of those having charge of him, the defendant would not be liable at all in this action.

This question is to be considered and determined with reference to both the law and the evidence applicable to the point.

It is to be noticed that, upon the evidence, there is no ground of pretence that any mismanagement or negligence had occurred prior to

Wilmot *v.* Howard.

the Friday after the original dressing, at which time the defendant was called in and examined the condition of the limb and of the patient.

The evidence, and the respective claims of the parties, as to the agreement on that Friday about the plaintiff's being seen by the defendant on the following Sunday, or Monday, or Tuesday, were submitted to the jury with satisfactory instructions.

Hence the question really is, whether, upon the evidence, the defendant could be found liable in this action, even though the failure of the plaintiff to get a sound arm resulted, *in part*, from the mismanagement or negligence of those having charge of the plaintiff. If he could, then he was not entitled to have his request granted; if he could not then it should have been granted.

It seems to us quite clear, that, upon the evidence, the defendant might well have been held liable, even though the jury should have found that the damage to the arm resulted, in part, from the alleged mismanagement or negligence of those having charge of him.

If the jury should have found, as they might on the evidence, that the improper manner in which the arm was dressed and kept till the Sunday after the accident had brought it into such condition, that the plaintiff must. inevitably have a defective arm, the defendant would be liable to action, even though it should be found that mismanagement or negligence in those having charge of the plaintiff may have aggravated the case, and rendered the ultimate condition of the arm worse than it otherwise would have been. The cause of action would have become perfected before the alleged mismanagement or negligence would have supervened. There is no pretence that the parents or attendants of the plaintiff had anything to do with the dressing of the arm. If the jury had found that that dressing was such, when continued according to the directions of the defendant, that it would produce a defective arm, and had that effect, then the right of action would have been perfected though the ultimate result might have been aggravated by mismanagement or negligence. In the cases supposed, such supervening mismanagement or negligence would bear only on the measure and amount of damages,—not on the right of action,

29

If the defendant would have been liable in either of the supposed cases, then, of course, he was not entitled to have his request granted.

In this respect the case would stand, by analogy, upon the same ground as a common class of cases, particularly for recovery of damages caused by alleged defects in highways. The liability of the town is established, the injury proved, and the resulting effects become the subject of inquiry; whereupon the town claims, and endeavors to prove, that, owing to mismanagement or negligence in treating the injured party, the consequences have been aggravated. Such showing on the part of the town does not touch the cause and right of action, but only the measure and amount of damages.

And here it may be well to remark, that this just illustrates and makes plain the distinction to be taken between the case before us, upon the precise point made by the exceptions, and all the cases cited by the defendant's counsel as applicable to it.

In those cases the alleged negligence on the part of the plaintiff was simultaneous and co-operating with the alleged fault of the defendant, an element in the very transaction which constitutes the alleged cause of action. The contributory negligence on the part of the plaintiff, in all the cases, that has been held to preclude his right of recovery, has entered into *the creation of the cause of action*, and not merely supervened upon it, by way of aggravating the damaging results.

These views leave this case to stand upon common principles by which a person is subjected to liability for the consequences of his wrongful acts and neglects, and, as the case is made up, it would seem that the defendant has had accorded to him every legitimate ground and means of defence. The exceptions state, "as to what the defendant's counsel claimed as to the effect of mismanagement, negligence, or want of proper care and attention on the part of the plaintiff and those other than the defendant, having the care and management of him, the court charged the jury, as to this branch of the case, and its effect on the rights of the parties, and upon the damages, to the satisfaction of the defendant, and so that no exception was taken, except the court did not charge that if the damage

or injury resulted, in part, from the mismanagement and negligence of those having the care and management of the plaintiff, the plaintiff could not recover."

In the view we take of the case, we do not find occasion to go into any general discussion of the subject as it is involved in, or related to, the cases that have been cited. This case stands upon simple and familiar principles, in no respect in conflict with any of the decided cases, and directly sustained by some, so far as they stand upon concurring analogies. *Robinson* v. *Cone*, 22 Vt. 213 ; *Burge* v. *Gardner*, 19 Conn. 507 ; *Daley* v. *Norwich & Worcester R. R. Co.*, 26 Conn. 91.

Judgment affirmed.