LEVANTIA S. CARPENTER, Respondent, *v.* ZARA H. BLAKE, Appellant.

It is not necessary, in order to sustain an action for malpractice against a surgeon, that there should be proof of gross culpability on his part; having engaged in the performance of services requiring skill and care, he is liable for a want of the requisite skill, or for an omission to exercise proper care.

In an action for malpractice it appeared that plaintiff dislocated her elbow joint, defendant was called in as a surgeon and attempted to reduce the dislocation, but as plaintiff's evidence tended to show, either through negligence or want of skill, he did not succeed; also, after the operation was performed, he omitted to give the arm the requisite support to keep the joint in place, and to prevent relaxation, if the dislocation was in fact, reduced, and omitted to give necessary instructions to the attendants, although instructions were asked for. In consequence, either of the dislocation not having been properly reduced, or of a subsequent relaxation plaintiff became permanently crippled. *Held*, that the evidence was sufficient to justify a submission of the case to the jury, and to sustain a verdict for plaintiff.

Upon the trial of the action it appeared that after attending plaintiff for a time defendant dismissed himself, stating that his services were no longer required; he subsequently, however, called and gave directions about the arm, and made statements as to its condition. Plaintiff was subsequently asked, " Did you rely upon what the doctor told you about the condition of your arm at these various times when he examined

it?" This was objected to and objection overruled. *Held,* no error; that as far as this question was concerned, it might be assumed that defendant occupied the same position as if he had acted continuously, but if not, if what defendant said misled plaintiff in respect to the importance of giving the arm additional surgical. attention, defendant was responsible. The court was requested by defendant's counsel to charge that if plaintiff was guilty of any negligence in the management of the arm, through or without the fault of the attending surgeon, after defendant ceased to have charge of the case, and such negligence contributed in any material degree to produce the present bad condition of the arm, defendant was not responsible. *Held,* that a refusal so to charge was not error. 1st. Because there was no evidence of such negligence. 2d. That the request was too broad as, even if there had been subsequent negligence, the cause of action for defendant's negligence, which had then accrued, would not be discharged; in any view it would simply go in mitigation of damages.

(Argued June 13, 1878; decided November 12, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict, and affirming an order denying a motion for a new trial. (Reported below, 10 Hun, 358; mem. of decision on former appeal, 50 N. Y., 692.)

This action was against defendant for alleged malpractice as a surgeon.

Plaintiff fell from a horse and dislocated the elbow joint of her left arm. Defendant was called in and operated upon the arm. The claim of plaintiff was that through want of skill, or negligence, defendant in fact never reduced the dislocation, or that if he did so he negligently omitted the necessary precautions to keep the bones in place, and in consequence they became displaced.

The further facts appear sufficiently in the opinion.

*Jno. A. Vanderlip,* for appellant. A surgeon engages that he possesses that ordinary learning and skill possessed by others in the same profession which is regarded as necessary to qualify him to engage in such business. (*Leighton* v. *Sargeant,* 7 Foster [N. H.], 469; S. & R. on Neg., §§ 435–

437; 1 Bouv. Inst., § 1005.) He does not undertake for extraordinary care and diligence any more than he does for extraordinary skill. (*Purves* v. *Landell*, 12 Cl. & Fin., 91; S. & R. on Neg., § 434 and note 4.) Such surgeon exercising his skill to the best of his judgment is not responsible for any errors he may commit. (*Pitt* v. *Yalden*, 4 Burr., 2060; *Swinfer* v. *Chelmsford*, 5 H. & N. [Exch.], 890, 921, 924; S. & R. on Neg., § 442; *Taft* v. *Carter*, 59 Barb., 67–70.) Even if plaintiff was misled by the physician's orders as no such fact was pleaded it is not available in this case. (*Bemus* v. *Howard*, 3 Watt, 255; *Pierce* v. *Kinney*, 59 Barb., 61.) It was error to receive in evidence proof of particular cases of supposed unskillfulness of defendant as a surgeon in answer to proof of his reputation as a skillful surgeon. (14 Wend., 110–111; 6 N. Y., 104; 1 Keyes, 250; 2 Phil. Ev. [C. &. H. ed.] 291; 1 C. & H. notes, 764, 766.)

*Lester B. Faulkner*, for respondent. The law implies that surgeons and physicians in the treatment of all cases they undertake will exercise reasonable and ordinary care and diligence, and give attention proportionate to the delicacy and importance of the operation and case. (13 N. Y., 9.) If the *settled* practice and surgical authority allow but one course of treatment in the case, then any material departure from such course might properly be regarded as the result of a want of care and attention, and such departure, if made in a case which is doubtful or uncertain, is made at the peril of the surgeon. (*Patten* v. *Wiggen*, 51 Me., 594; *Ritchey* v. *West*, 23 Ill., 385; *Long* v. *Morrison*, 14 Ind., 595; *Bellinger* v. *Craigue*, 31 Barb., 534; *Wood* v. *Clapp*, 4 Sneed. [Tenn.], 65; *Caudless* v. *McWha*, 22 Pa., 261; *Bowman* v. *Woods*, 1 Iowa, 441; *Landon* v. *Humphrey*, 9 Conn., 209; *Leighton* v. *Sargeant*, 7 Foster, 460; 60 Barb., 488; 50 N., Y., 696.) When a surgeon is employed to treat a dislocated or broken limb and makes several visits in the course of his employment, the contract he enters into is *entire*. (*Bellinger* v. *Craigue*, 31 Barb., 534; 1 Chitty on Contracts,

§ 483; *Ritchey* v. *West*, 23 Ill., 385.) When a surgeon fails in his duty to exercise the measure of skill, care and attention implied by his undertaking, he is liable in damages to the person employing him. (*Bellinger* v. *Craigue*, 31 Barb., 534; *Landon* v. *Humphrey*, 9 Conn., 209; Story on Bail., § 431; see this case, 60 Barb., 488.) It was competent to show that plaintiff had followed defendant's direction implicitly. (60 Barb., 488, 515, 521; 50 N. Y., 696.) It was proper on cross-examination to ask one of defendant's witnesses, who had sworn to his reputation as a skillful surgeon, if he had heard of a specific instance of unskillful practice by him. (*Leonard* v. *Allen*, 11 Cush., 241; *Rex* v. *Martin*, 6 C. & P., 562; 60 Barb., 488; 50 N. Y., 696.) If the court has already charged the law as to the material questions involved it is not error to decline to charge abstract propositions submitted by counsel. (*Woody* v. *Osgood*, 54 N. Y., 488; *Algier* v. *Gardner*, id., 360, 364; *Small* v. *Smith*, 1 Den., 583; 60 Barb., 488, 519; 50 N. Y., 696.) Plaintiff had a right to rely upon the assumption that defendant had done his duty, defendant having often told her he had done it. (*Weston* v. *N. Y. El. R. R. Co.*, 17 Alb. L. J., 415; 60 Barb., 519; 50 N. Y., 696; *Hathorn* v. *Richmond*, 48 Vt., 557; 39 id., 447; *Hedgeman* v. *W. R. R. Co.*, 13 N. Y., 9; *Brown* v. *N. Y. C. R. R. Co.*, 34 id., 404, 412; *Smith* v. *N. Y. and H. R. R. Co.*, 19 id., 127 133.)

MILLER, J. The rules which relate to the liability of a surgeon for negligence or want of skill while engaged in the discharge of the duties of his profession are correctly laid down in the opinion of the General Term in accordance with the views expressed by ALLEN, J., when this case was heard upon a former appeal in this court. These rules do not demand that in order to sustain an action against a surgeon for malpractice that there should be proof of gross culpability upon the part of the surgeon, but place him in the same position and subject him to the same degree of liability as attaches to persons who are engaged in the performance of

services which require skill and care, and who are held responsible for a failure to exercise proper care and who are negligent in the discharge of the duty imposed upon them. These principles being well established it is not important to examine in detail the reported cases bearing upon the question or to reconsider the grounds upon which they are based.

It is urged by the defendant's counsel that the court were in error in refusing to dismiss the plaintiff's complaint and that whatever rule of liability may be held to apply the evidence fails to establish any right to recover against the defendant. The position taken rests upon the assumption that there is no evidence whatever to uphold the finding of the jury; either that the defendant did not possess the requisite skill to reduce the dislocation or that there was any neglect or want of proper care in the performance of the act. It becomes therefore material to inquire whether there was any testimony whatever to sustain the verdict and it matters not whether there was a want of the requisite skill or an omission to exercise a proper degree of care; for in either contingency the same result must follow and the defendant would be liable for the injury caused and actually sustained by the plaintiff.

The defendant's counsel claims that the dislocation was properly reduced, and that the elbow joint of the left arm which had been displaced, remained in its place so long as defendant attended the plaintiff, and until another surgeon was called. There is evidence which showed that the process which the defendant adopted in reducing the dislocation as stated by him, was the proper one, and it was approved of and sustained by the testimony of several surgeons and physicians. But such evidence is not without contradiction and there is a dispute in the testimony as to whether the plaintiff's arm was set at all, and even if it was, whether the proper course was pursued in reducing the dislocation. As to the setting of the arm the defendant testifies that he did reduce the dislocation. This is denied by the plaintiff, and

if the plaintiff's testimony is to be credited, the injured limb did not present the usual symptoms attending the placing of the dislocated bones in their proper position. On the contrary, there was every indication of a continued displacement from the twenty-eighth of June, until the second effort made to reduce the dislocation in the month of September following, and after that time a permanent injury to the arm from which the plaintiff has never recovered.

According to the plaintiff's testimony, she did not discover that the bones were restored to their place by the ordinary manifestation of the noise made when such an occurrence takes place or by being relieved from pain. She also testifies to the fact that after the operation had been performed there was a protuberance at the elbow joint which never disappeared. She is supported by the evidence of Leach who testifies that after the defendant had left his patient, on the very evening that he attended the plaintiff to reduce the dislocation, he saw the plaintiff's arm and discovered a prominence back of the elbow in the nature of a projection very much as it was at the time of the trial. According to all the testimony in the case this was a certain indication that the elbow still remained dislocated and had never been put in its proper place, and the evidence tends strongly to show that this prominence remained and continued unreduced from the time it was first discovered. It is no sufficient answer to this evidence to say, that Leach was not to be believed, or that his testimony was probably false, or that he may have made a mistake. Nor can it be urged we think that his testimony should be entirely disregarded upon this appeal, because he was not on friendly terms with the defendant, or that the fact that it was not observed by others present, until a later day, or because Drs. Blake and Endress' testimony is in conflict with the evidence of Leach, that therefore Leach's evidence should not be considered. The question as to Leach's credibility as well as the other matters to which we have referred, were for the jury and it does not rest within the province of this court to determine

where the evidence is contradictory to the extent disclosed by the record before us, that certain portions of the testimony should be ignored. The strong fact that the limb was useless afterwards to the plaintiff, with proof of the circumstances already considered, presented evidence for the jury to determine certainly whether there was a failure to perform successfully, not an uncommon operation in surgery by reason of negligence or a want of skill, and which might well be regarded, if the plaintiff's testimony was to be believed, as fastening a liability upon the defendant.

Another fact should be taken into consideration and that is, the manner in which the defendant performed the service required of him. The defendant swears that when he set the arm, he extended, flexed, and rotated it, where he set the joint, to ascertain whether the bones were in the right place, and that he was satisfied that they were. The plaintiff denies that this was done. It is not questioned but this was the proper and correct treatment for such a case, and although it is quite probable that the defendant was in a better condition to know and to remember what he did than the plaintiff, who was nervous and afflicted with pain, yet it was for the jury to say where the truth lay, in reference to this branch of the case. To contend that the testimony of the attending surgeons is entirely controlling is to ignore well-settled principles, which are applicable to trials of issues of fact before a jury. It was also controverted upon the trial, whether the arm after it was set was placed at a right angle as was claimed and the necessary means resorted to for the purpose of keeping it in that position, and it is urged that the defendant was negligent in having omitted to give it such support as was essential for that purpose. The arm was placed upon a pillow and assuming as was testified, by the defendant's witnesses, that the position was entirely right, and that the witnesses for the defendant are entirely reliable, the question arises whether prudence and ordinary skill did not demand that some means should have been taken to keep it there.

It was dangerous to straighten the arm, or to move it out of its place, and yet it was left without anything to keep it in place and subject to the risk of being displaced by the excitement of a nervous woman, afflicted with pain and suffering, and liable in her anguish to change the position of her arm. The responsibility of not providing safe-guards against the consequences of her imprudence, or want of self-control, rested with the defendant. Neither a sling, which is a common mode, according to some medical authorities, nor splints, which might have been used, were employed. No measures in fact were taken to prevent the joint if actually set from being again dislocated. No intimation, as some of the evidence shows, had been given to those who attended the plaintiff, of this great peril, although instructions were asked for and she was left in charge of those who by reason of their ignorance or inexperience, might well have neglected to give that care, attention and vigilance, which if proper knowledge and information had been communicated, might have been observed. It is said that Mrs. Miller who attended the plaintiff, admits that the defendant gave directions to "stand and watch." Whether this was sufficient to point out the danger and to guard against reluxation, is not entirely manifest, as the language employed conveyed no information of the nature of the difficulty which might ensue, or how to guard against it. If there was a negligent omission in the particulars indicated, or unskillfulness, the liability of the defendant was the same. Proper instructions may have avoided much of the suffering to which the plaintiff was subjected, and prevented the serious consequences which followed.

The defendant claims that the arm was put in its place and remained so as long as he had charge of the plaintiff and therefore the defendant is not responsible for what occurred after he committed the case to the care of the family physician of the plaintiff. In the first place it was a disputed question of fact, as we have seen, whether the arm was ever properly set; but even if such was the fact, if by

reason of the want of skill or the negligence of the defendant while he had charge the bones again became displaced, or when he afterwards assumed to act in the case, he did so as the plaintiff's surgeon, and the injury was caused, we think that the defendant was liable. The judge properly charged if the defendant was dismissed with the assent of the plaintiff, he was not responsible for subsequent results, yet if he deceived and misled her and the arm was not in good condition he was responsible unless the injury occurred after that time. If he acted subsequently in the capacity of a surgeon after he consulted her as such, he was responsible for any neglect or unskillfulness on his part which occurred in the discharge of his duty.

In the discussion which has been had, I have referred to the leading positions assumed by the counsel for the appellant in favor of the ground taken, that the complaint should have been dismissed, and it is obvious that sufficient reasons are apparent for submitting the case to the jury. It was entirely clear from the testimony that the plaintiff had sustained an injury, which subjected her to great pain and anguish, and has probably caused her to be a cripple for the remainder of her life. It is equally plain that this was the effect of not having the dislocated limb properly reduced, or if it was so reduced by reason of a reluxation of the injured joint. The questions to be decided were. First, whether the defendant possessed the ordinary skill of a person acting in the capacity of a surgeon; and Second, whether if he did he was negligent in not applying the proper treatment to the plaintiff. These were peculiarly questions of fact for the jury, and there is no sufficient ground for holding, that the facts embracing as they did, a large and extended field of inquiry, were of such a character as to take the case from the jury, and to authorize a holding that as a matter of law the complaint should be dismissed.

Upon the trial the following question put to the plaintiff upon her examination as a witness, "Did you rely upon what the doctor told you about the condition of your arm at these

various times when he examined it ? " This was objected to ; the objection overruled and an exception taken to the ruling. The objection is placed upon the ground that the plaintiff was, or had been under the charge of her own surgeon, or if not that she had no surgeon of her own. There was evidence showing that the defendant had really dismissed himself for the reason that his services were no longer required. He subsequently however called and gave directions as to the arm and made various statements as to its condition. I think it may be assumed, so far as this question is concerned, that at that time he occupied the same position as if he acted continuously. But whether he really was in the case continuously or otherwise, there could be no objection to the question. If what was said in regard to the condition of the arm, misled the plaintiff in respect to the importance of giving it additional attention, and prevented her employing a surgeon for that purpose, no reason is apparent why he should not be held responsible for the consequences which followed. The defendant had been her original medical attendant and adviser, and it was reasonable to suppose even if he had not continued treating her after he had left the case, that his advice would be followed. That she believed what he did say as to the condition of the arm is an excuse for not knowing that the arm was improperly set, and if it was not for not using other means to secure the proper treatment to remedy the difficulty. Nor is it an answer, we think, to the considerations suggested, that the plaintiff was or had been under the charge of another surgeon, or that the conversations between the plaintiff and the defendant were more of a friendly character, and not while the defendant acted in a professional capacity. A similar objection was urged in a subsequent part of the case, to a question put as to the reason why the plaintiff did not apply to some other surgeon to have her arm examined, and must fail for the same reasons which render the prior question, which has been referred to, competent. The other objections as to the admissibility of evidence, were not

pressed upon the argument, and we think have no merit.

Various exceptions are also taken to the charge of the judge, and his refusals to charge. The first request, the omission to charge which is claimed as erroneous, was, that *under the pleadings* in the case, the plaintiff could not recover for any misleading or deception at the time the defendant dismissed himself. The same question was raised by exception to the charge that the defendant would not be responsible unless he misled the plaintiff when he dismissed himself. To the last exception the judge responded that he did not intend to charge in that way, unless by this language she had a right to understand, she did not need a surgeon any longer. No claim was made by the plaintiff for damages in this respect, and hence there would seem to be no propriety in the request, and it was not pertinent to the case. Independent however of any such consideration, the request made would exclude a recovery for damages for the want of skill, and negligence of the defendant, in setting the arm, which may have been occasioned by misleading the plaintiff. If by reason of the defendant's ignorance, or his negligence, he had induced the plaintiff to rest quiet, and lulled her into security, so that she was misled or deceived, and failed to employ a surgeon in due season, or to use the necessary precautions to prevent the joint from being displaced after he had as claimed set the same it would seem but just that the defendant should be liable for such misleading and deception. The allegation was that the defendant was chargeable with malpractice at the time he attempted to set the arm, and that he ignorantly and negligently failed to accomplish a reduction of the dislocation, or if he did so, that it was carelessly allowed to reluxate on the very night of the operation. The defendant claimed that the plaintiff should have called in other surgical aid if a mistake had occurred, and to rebut this position it was proved that this was not done, because the defendant himself represented to the plaintiff that the arm was properly set, and would come all right in time, thus causing her to desist from employing any other surgeon.

The misleading of the plaintiff in reference to the actual state and condition of the arm, certainly tended to establish the cause of action, and it would have been improper to exclude the effect of it from the consideration of the jury, in establishing a case. It should not be overlooked that upon exception being taken to the charge in this respect, the judge qualified and restricted what he had previously said, so as to hold in effect, that the plaintiff could not be misled unless she understood that a surgeon was no longer required.

Nor was there any error in refusing to instruct the jury, that the defendant was not responsible for anything done or omitted after he was dismissed. The charge of the judge sufficiently and fully covered this branch of the case. The judge among other things charged, that if the defendant was dismissed with the plaintiff's assent, she had no right to hold him responsible for any subsequent results to the arm, and that if they found he deceived and misled her, and that the arm was not then in good condition, that he should be held responsible for the injury that occurred after that time. This was as favorable to the defendant as was authorized by the facts. Suppose the defendant had misled the plaintiff so that she failed to employ or to call in the aid of another surgeon for that reason, could it be claimed that the defendant was not responsible for the omission caused by his failure to give the necessary information, and for leaving the plaintiff in ignorance of the actual state of the case? Clearly not, for the plaintiff had a right to assume that the defendant had performed his work in a skillful manner, and if there was any omission it was occasioned by the fault of the defendant, and not of the plaintiff.

The request to charge that, if the plaintiff was guilty of any negligence in the management of the arm, through the fault of her attending surgeon, after the defendant ceased to have charge of the case, or without such fault of the surgeon, and such negligence contributed in any material degree, to produce the present bad condition of the arm, the defendant was not responsible, was properly refused. To this

request the judge declined to charge except as already charged.

There was testimony that it was quite obvious that immediately after the defendant had given up his charge of the plaintiff's case, the bones were not properly set, or that they had become displaced after the dislocation was reduced. This was one of the questions controverted upon the trial, but there was no direct evidence of negligence after the plaintiff had employed another surgeon on the part of either the plaintiff or of her surgeon. Upon this ground the refusal to charge as requested can be upheld. But even if it were otherwise the proposition contained in the request was too broad and not authorized by the facts. The evidence of the plaintiff established that the alleged malpractice occurred while the defendant was acting as her surgeon and the cause of action had then accrued. The request would have justified the jury if there had been any negligence after the defendant had relinquished his charge in finding a verdict in favor of the defendant even if the injury had been caused by the negligence or unskillful practice of the defendant prior to this time. The cause of action which had previously accrued could not thus be discharged by subsequent negligence of the plaintiff or her surgeon. The most which could be claimed on account of any subsequent negligence would be that it should mitigate the amount of the plaintiff's damages. (*Wilmot* v. *Howard*, 39 Vt., 447; *Hathorn* v. *Richmond*, 48 id., 557.)

It is also insisted that the request to charge, " that if the defendant gave advice to the plaintiff after his discharge, without being employed by her, and entitled to compensation, he was not responsible," should have been charged without the qualification " and did not mislead or deceive her," added by the judge. We think that there was no error in this respect. The defendant had been employed as the plaintiff's surgeon, and unfortunately by reason of his want of skill, or for some other cause, she had sustained serious injury. The proof tended to show that it was attributable

to malpractice on his part, and if in interviews after he had been discharged, he gave advice which was wrong and which tended to mislead and deceive her, I think he was responsible for such advice. He thereby assumed to act on her behalf and no valid reason exists why he should not be liable for the act. But the request was too broad, as it might if charged, have left the jury to infer that the defendant was entirely discharged from liability, even for the time during which he was acting as surgeon.

No other question urged requires examination. The case has been carefully considered in the various stages in which it has been presented to the courts, and we think that the judgment was right and no error was committed which demands a new trial.

The judgment should therefore be affirmed.

All concur.

Judgment affirmed.