Bradley, J.
The plaintiff came from Ohio to the defendant’s hotel in Buffalo, October 22, 1879, with a view to medical treatment. She had then been afflicted for several years with retroflexion of the womb and inflammation of the adjacent structures, and had been under medical treatment.
Shortly after her arrival at the defendant’s hotel a history of her case was taken by the medical attendants. An examination was made, both digital and specular, and she was informed that she had a uterine tumor, and they -advised its removal. And in a few days she submitted to the operation for its removal, which was performed with a platinum knife, heated to a white heat by a galvanic battery. This is termed in surgery a galvano cautery.
The immediate effect of the operation upon the plaintiff was prostration, and followed by great pain in its locality, which continued while she remained at the defendant’s *454 hotel. And the evidence tends to prove that since the operation she has suffered more and been less able to be about and attend to the performance of service than she had been before then. This she attributed to the alleged improper treatment by the defendant while under its care, and mainly to the surgical operation before mentioned.
The physicians who made the examination of the plaintiff and participated in the operation were three in the defendant’s service. One of whom is said to make a specialty of female diseases, and mainly had charge of that department of the medical treatment of the association. Another was an operating surgeon of the establishment, and the third was the financial and business manager of the institution.
They seem to have been united in judgment that the operation should be performed, and by their evidence agree in the fact founded upon personal examination that the plaintiff had at the location mentioned a fibroid tumor of the size of a Concord grape.
The first question requiring consideration is whether the evidence was such as to permit the jury to find that there was no tumor. If there was none the conclusion was' justified that the defendants either did not possess or exercise the ordinary skill which the defendant undertook they had and which they assumed to exercise, as it does not necessarily appear that anything more than the use of ordinary professional skill and care were required to distinguish a tumor situated as this was said to be from any other and less serious condition.
The defendant’s three physicians referred to, by their evidence, state positively that there was a tumor; that they felt it, and with the aid of a speculum, saw it distinctly; that it was removed, and after its removal they looked at it. If their evidence is believed, there was a tumor and they removed it.
This was treated by the trial court as a question of fact for the jury, and submitted to them. These three witnesses had such relation to the defendant, and to the transaction of advising the operation and performing it as to present to some extent the question of the credibility of their evidence in that respect. Dean v. Van Ostrand, 23 N Y. Week. Dig., 97.
Yet if there is no evidence fairly tending to prove to the contrary, the fact must remain as stated by them that there was a tumor, because the burden is with the plaintiff to establish the facts upon which the right to recover depends, and the mere fact that the credibility of a witness against her is involved does not have the effect to prove the non *455 existence of the fact so testified to. Wallace v. Berdell, 97 N. Y., 13.
The evidence of one witness (D'r. Adams), on the part of the plaintiff, was that he treated the plaintiff for about two years prior and up to July, 1877, and incidentally thereafter, until August 25, 1879; that during all that time he found no tumor in or about the uterus; that he made a digital and speculum examination on August 25, 1879; that there was then as there had been some enlargement of its neck, but nothing he would call a tumor; that a tumor there would have to be very small not to be observed; that there might be difficulty about it, but if of the size of a Concord grape it ought to be discovered; that it would not necessarily be discovered by one examination, probably would be if examination thoroughly made; that if it had been of that size he should have noticed it; that a fibroid tumor could not have its inception, and develop itself there to the size of an ordinary grape in two months, and that it would take at least a year for it to grow to the size of a robin’s egg or hickory nut, and might take longer if of remarkably slow growth. Another doctor says that a fibroid tumor is of slow growth. And others say that it some times grows rapidly, and might within that time develop from an imperceptible condition to the size represented as that of this one. This is said to have been an interstitial tumor, which is more difficult of diagnosis, and removal than one with a pedicle. There is also the evidence of a doctor that some weeks after the operation he examined the plaintiff, and although he saw a scar at the place of the operation, he thought there had been no tumor there, but upon his further evidence and that of others, as shown by the record, it very clearly appears that a few weeks after the operation, no condition necessarily appeared which could enable one to tell whether or not a tumor had existed there and been removed. The examination which Dr. Adams says he made in August, 1879, was within two months of the examination by the defendants, and when they say they found the tumor. Upon the whole evidence the jury may have found that at the time Dr. Adams made such examination the tumor was there, and escaped his observation because then much smaller than it was two months afterwards. And there is some evidence to the effect that there are other conditions which may be mistaken for a tumor, but that does not, so far as we are able to observe from the evidence, seem to apply to this case so as to justify the conclusion that a skillful physician would be led into such an error. While the evidence on the part of the plaintiff in view of the other evidence (exclusive of that of the defendant’s physicians), did not necessarily prove *456 that there was no tumor there at the time of the operation, we think it was sufficient to present a question of fact in that respect for the jury. In view of the questions submitted to them by the trial court, the verdict for the plaintiff did not necessarily depend upon their finding that there-was no tumor, but although they may have found that-there was one removed by the defendant’s physicians, they may have found for the plaintiff, because the operation, should not have been performed, “or was not properly per formed.
And here arises the inquiry whether those questions-should have been submitted to the jury for their consideration and as a substantive ground of liability of the defendant in the eyent they found that there was a tumor removed. The defendant’s counsel took exception to the submission to the jury of any question of fact other than that whether or not there was a tumor, and to the refusal of the court to charge that if there was a tumor the verdict should be for the defendant. The question will be considered in view of those exceptions.
The defendant’s physicians assumed to have, and for its protection were required to possess, at least ordinary professional intelligence and skill, and with .their best judgment to exercise it in the treatment of the plaintiff. They were not required to insure results or to guarantee that the consequences would be beneficial. While the responsibility of the medical practitioner and surgeon is great, and care proportionally should be observed in the exercise of his professional employment, when his errors are those of judgment only, if he keeps within recognized and approved methods, be is not hable for their consequences. Leighton v. Sargent, 27 N. H., 460; S. C., 59 Am. Dec., 888; Carpenter v. Blake, 60 Barb., 488; 50 N. Y., 696; S. C., 10 Hun, 358, affirmed 75 N. Y., 12; Boldt v. Murray, 2 N. Y. State Rep., 232. Upon the assumption that there was a tumor, the burden was with the plaintiff to prove that the doctors either had not the professional skill which they assumed to have, or were required to possess, of that having such skill they failed to exercise it in directing and performing the operation. There is no evidence to justify the conclusion of their want of the requisite professional intelligence, unless it is found in the manner which they treated the plaintiff’s case. The manner and means of the operation are not very seriously criticized by the evidence. The galvaniocautery was one of the approved methods of surgical operations, and seems to have been a useful procese to prevent; hemorrhage. There is nothing remaining in the structural conditional at the place of removal which indicates that the-instrument was applied in an improper manner in the re *457 moval of the tumor. But there is evidence tending to prove that the plaintiff’s condition was worse after than before the operation, and to justify the inference that its effect was an aggravation rather than a beneficial remedy. _ The plaintiff had been under medical treatment and without cure for many years. Of this the defendant’s doctors were advised, and, assuming as before, that they found a tumor and that, in their judgment, its removal was essential and would be beneficial in its results, the defendant was not-liable for the consequences that followed, unless the plaintiff’s situation was such as to require of ordinary professional intelligence and skill the knowledge or reasonable apprehension that results injurious, or those which did, would follow. The condition in the parts involved was that of inflammation. And if the inflammation was acute the evidence tends to prove it could not be properly made, but that in such case it should have been delayed until such condition subsided. The evidence is not that it was acute but chronic inflammation. And in view of the trouble of retroflexion of the womb, from which the plaintiff was suffering, whether it was advisable or proper to perform the operation, seems by the evidence to be the subject of difference of opinion.
Since its performance it is easy to see its effect, and that it probably had better not have been done, not however on account of any structural defect or deformity produced by it, because there was none such, but for the reason that it probably had the effect to increase the inflamation caused by another organic disease or difficulty, and through it produced consequences unfavorable to the condition and comfort of the patient. And the question to some extent arises whether this effect of such cause was within the knowledge required to constitute the ordinary and reasonable intelligence and skill of the medical profession. As before remarked, mere error in judgment as disclosed by consequences produces no liability when there is no departure from a professionally approved line of action. By this is not meant that every skillful member of the profession would or should necessarily adopt precisely the same remedy for a like condition. Such an arbitrary rule would have the effect to unduly qualify the right of exercising judgment required by attending circumstances, temperament, and physical condition of patients, and the complication of diseases and physical troubles involved, but in the main to observe and take the benefit of the past experience and learning of the profession and adopt them as the rule of action when practicable rather than new and experimental *458 methods. Much must necessarily rest in the judgment of the attending physician.
The difference of opinion in respect to the propriety of a specific treatment may be one of judgment rather than skill, and therefore insufficient to present the question of liability upon the charge of malpractice as one of fact, else it would be difficult to find a cause of unfavorable results from medical treatment which would not furnish a question in that respect for the jury.. The evidence in the case at bar on this subject is largely matter of the opinion of members of the profession and of difference of judgment as to the propriety of the operation referred to. On the one hand it is said that in view of the condition of the parts involved it was improper to attempt the removal of the tumor, while on the other hand it is said that the tumor may have been regarded as an exciting cause, and that its removal would be deemed proper with a view to the treatment of the other difficulty, although there was then chronic inflammation.
There is also evidence tending to prove that a tumor of the size of and situated as was this one, was of itself substantially harmless, that it might disappear by the natural process of absorption, that on account of the other structural and the inflammatory condition aggravation may have been apprehended as the consequence of the operation, that pelvic inflammations are exceedingly grave and fatal in their results, and that an operation during the existence of that condition would almost certainly increase the inflammation, and the patient being in a condition of prostration, “the shock of the operation would be likely to produce serious if not fatal consequences;” that a tumor situated ns this was, with other parts affected as they were, should not be removed by operation unless and until it became a necessity for the safety of the patient, and that there was no immediate necessity, apparent or real, for the removal of this tumor.
This operation was performed shortly after the plaintiff came to the defendant’s place for treatment and without the previous application of palliatives to reduce or allay the inflammation. This is also a subject of criticism by some of the evidence. While on the part of the defense it is to the effect that there was no inflammatory condition requiring attention, and that a chronic inflammation merely was no cause to interrupt the operation, but that in view of all the apparent conditions it was proper practice. There was much evidence upon the subject given on the part of the respective parties. And it cannot be harmonized. But we think that given on the part of the plaintiff was sufficient to present a question of fact for the jury, and to permit them to find that the defendant, through its physi *459 cians in concluding that the operation to remove the tumor should be made and in doing it at the time it was performed, failed to exercise the ordinary and reasonable medical intelligence and skill which they assumed to have and undertook to exercise in the treatment of the plaintiff. And that apprehension of consequences seriously unfavorable to her health and condition from such operation was within the knowledge requisite to such intelligence and skill. The difficulty arising upon the conflict of the evidence is deemed settled by the jury, and we cannot say that their finding is so against the weight of the evidence as to require or justify disturbance of their verdict. The statement in the complaint of the cause of the action in respect to the subject last considered is not complete and may be somewhat defective, but the action was tried upon the merits in all its aspects. And the matter of pleading does not, nor do any exceptions founded upon the cause of action as alleged in the complaint require consideration. Hone of the exceptions seem well taken.
The judgment and order should be affirmed.
Smith, P. J., and Haight, J., concur.