HRUBES, Administrator, Respondent, vs. FABER, Appellant.

*March 16—April 11, 1916.*

*Physicians and surgeons: Malpractice: Degree of care and skill re-*
   *quired: Death of child from diphtheria: Examination and treat-*
   *ment: Antitoxin: Proximate cause: Questions for jury.*

1. A physician is not required to exercise the highest degree of skill
   or the utmost care in diagnosis or treatment, but only such rea-
   sonable care and skill as is usually exercised by physicians in
   good standing, of the same school, in the locality in which he is
   practicing.
2. Thus, a physician could not be held liable for the death of a child
   from diphtheria, on the ground of negligence or lack of skill in
   his diagnosis or treatment of the case, merely because he did not
   have a bacteriological or microscopical examination of the con-
   tents of the throat made, where the evidence showed that it was
   not usual or customary for physicians to have such an examina-
   tion made except in cases where a membrane was present and
   did not show that in this case there was at any time a membrane,
   and no physician who testified was able to say, upon the evi-
   dence as to the symptoms, that defendant should have suspected
   the presence of diphtheria.
3. It being established by the evidence in such case, among other
   things, that, in the absence of a membrane or other symptoms
   pointing directly to the presence of diphtheria, antitoxin should
   not be administered; that such symptoms were not present; that
   the result where antitoxin is not administered in the early stages
   of diphtheria is uncertain, and that no one can say in a given
   case what the result would be if antitoxin were administered, a
   finding by the jury that the death of the child was caused by de-
   fendant's failure to exercise ordinary care was based upon mere
   conjecture and cannot stand.

APPEAL from a judgment of the circuit court for Milwau-
kee county: LAWRENCE W. HALSEY, Circuit Judge. *Re-
versed.*

This is an action to recover damages for death alleged to
have been caused by the unskilful and improper treatment
by the defendant of Helen Hrubes, deceased daughter of the
plaintiff, who died of diphtheria. The facts were these:
The defendant, a practicing physician and surgeon, **was**

called to attend the deceased child on Saturday, October 12th. She first complained of sickness on Friday afternoon, October 11th. The only definite symptom was headache. She was in school on Friday morning but at home in the afternoon. She did not complain of anything else and did not complain of sore throat at any time. The defendant saw Helen at her home on the afternoon of October 12th, about twenty-four hours after she began to complain. At the time of such examination she complained of headache, and defendant found a swelling in the back part of the throat. There was no redness, the color was like the rest of the throat, only thickened; her general appearance was favorable and she had no fever. Helen, who was a little over seven years old, would not hold still, and the defendant advised her father to bring her to his office the next morning, Sunday, October 13th, in order that a more thorough examination might be made. At that time the defendant, assisted by Dr. Stolz, administered enough chloroform to relax the patient, and the defendant made a careful examination of the swelling and the throat and found no membrane present and discovered no other symptoms which caused him to suspect the presence of diphtheria. Dr. Stolz, who administered the anesthetic, examined the throat, and outside of a small circumscribed area on the left side, which he thought looked like an abscess and which might contain pus or fluid, there was no swelling or any sign of membrane, and no signs or symptoms of any serious condition outside of what appeared to be an abscess. The condition of the throat did not, in the opinion of Dr. Stolz, resemble diphtheria at all. The patient returned to her home and the defendant did not see her again until Tuesday evening, October 15th, when he was requested by the father to visit her again, which he did at her home. At that time she walked into the room where he was sitting and he made a slight examination. She had the same swelling, slightly en-

larged; there were no local signs to indicate the presence of diphtheria. On Tuesday evening the swelling was more pronounced, and particularly on the outside. At that time defendant prescribed the use of an ointment which is commonly used in treating mumps, and gave no other treatment. He did not see the child again, and she died without further treatment or examination the next day, Wednesday, at 11 a. m. At the time of her death she was unconscious, in great pain, and was bleeding from her mouth and nose and catching for breath. After consultation with the health authorities of the city of Milwaukee, *Dr. Faber* signed a death certificate stating the cause of death to be diphtheria. The evidence does not show how this conclusion was arrived at, whether by post-mortem examination or otherwise, and it was conceded upon the trial that the child died of diphtheria. Three physicians besides the defendant testified as to the symptoms, diagnosis, and treatment of diphtheria, and the case was submitted to the jury upon a special verdict.

The jury found (1) that the defendant failed to exercise ordinary care in diagnosing or treating the deceased, Helen Hrubes; (2) that such failure on the part of the defendant to exercise ordinary care caused the death of Helen Hrubes; (3) that the defendant did not advise the plaintiff on Sunday, October 13th, to get a physician other than himself to treat the child; (4) that defendant did not make known to the plaintiff that he did not want to take cases requiring visits or treatment outside of his office; (5) that the damages resulting from the death were $800. The plaintiff had judgment, which was affirmed by the circuit court for Milwaukee county on appeal, and from the judgment of the circuit court this appeal is brought.

For the appellant there were briefs by *Lines, Spooner, Ellis & Quarles,* and oral argument by *Leo Mann.*

*F. F. Groelle,* for the respondent.

ROSENBERRY, J.    The defendant moved for judgment notwithstanding the verdict, and assigns as error the refusal of the trial court to grant such motion and bases his argument in support thereof upon two propositions:

(1)  There is no evidence of any want of ordinary care and skill on the part of the defendant in the diagnosis and treatment of the deceased child.

(2)  There is no proof that the failure to administer antitoxin, concededly the proper treatment, was the cause of the child's death.

There was no substantial variation in the testimony of the physicians as to the symptoms of diphtheria and that the treatment thereof when its presence is established requires the administration of antitoxin.    Summarizing the testimony of the physicians, the following appear to be the usual and ordinary symptoms of diphtheria: It may develop four or five days before death; it sometimes develops within twelve hours of death, and death sometimes occurs at a considerable interval of time after the patient has apparently recovered.    It usually commences with a sore throat, general lassitude or tired feeling, rise of temperature, although fever is sometimes absent, and a swelling of the involved parts, although in some cases the swelling is very slight.    It is ordinarily located in the mucous membrane of the throat, sometimes in the nose, sometimes in the larynx, and sometimes all three places are involved.    A white membrane is usually formed over the involved area within twenty-four to forty-eight hours, depending on the activity of the disease.    In making a diagnosis of a suspected case of tonsillar diphtheria, the physician would make an ordinary examination under the eye by looking into the throat and observing its condition, and if there was a membrane he would then make or cause to be made a bacteriological or miscroscopical examination of the contents of the throat.    The membrane is the danger signal, the characteristic symptom, but is sometimes present in other diseases, not-

ably follicular tonsillitis, and in order to determine whether or not a patient is suffering from diphtheria a bacteriological or microscopical examination should be made, which will determine the character of the disease.    In some cases a physician having and exercising the highest degree of skill might still err in his diagnosis.    As soon as the diagnosis of diphtheria is made, the use of antitoxin should be resorted to, it being injected under the skin, and the involved area is treated locally by the use of antiseptics.

It appears from the evidence that if antitoxin is administered promptly, that is, within twelve to twenty-four hours from the time the patient comes down with the disease, ninety-six to ninety-seven cases out of one hundred recover; that if it is administered later during the progress of the disease the results are uncertain; that in cases of diphtheria where antitoxin is not administered, from fifty to sixty out of one hundred recover.    No physician can say with a reasonable degree of certainty that the use of antitoxin will produce recovery in any given case; it might work out in one case and not work out in another.    So that it cannot be said in any given case that a recovery would have been certain had antitoxin been used.

The physicians agreed that it was not usual and customary practice to have a bacteriological or microscopical examination made except in cases where a membrane developed, and no physician was able to say, upon the testimony in this case as to the symptoms of the deceased child, that the defendant should have suspected the presence of diphtheria, there being no complaint as to sore throat, although she had a sore throat, no complaint as to backache, tiredness, and no membrane present, and no temperature.

The case was submitted to the jury apparently upon the theory that, it being an admitted fact that the child died of diphtheria and it being established that a bacteriological or microscopical examination of the contents of the throat will

determine the presence or absence of the disease in a given case, and it appearing that the defendant had not caused such examination to be made, the jury might say whether or not he had exercised ordinary care in his endeavor to discover the child's ailment. This wholly ignores the standard of care and skill which the defendant was obliged to exercise. The law upon this question is plain and elementary and has been many times declared by this court:

"The general rule of law is that a physician or surgeon, or one who holds himself out as such, whether duly licensed or not, when he accepts an employment to treat a patient professionally, must exercise such reasonable care and skill in that behalf as is usually possessed and exercised by physicians or surgeons in good standing, of the same system or school of practice, in the vicinity or locality of his practice, having due regard to the advanced state of medical or surgical science at the time. This rule is elementary. It has its foundation in most persuasive considerations of public policy. Its purpose is to protect the health and lives of the public, particularly of the weak or credulous, the ignorant or unwary, from the unskilfulness or negligence of medical practitioners, by holding such practitioners liable to respond in damages for the results of their unskilfulness or negligence." *Nelson v. Harrington,* 72 Wis. 591, 597, 40 N. W. 228; affirmed, *Wurdemann v. Barnes,* 92 Wis. 206, 66 N. W. 111; *Marchand v. Bellin,* 158 Wis. 184, 147 N. W. 1033.

It appeared without dispute that it is not usual or customary for physicians to cause bacteriological or miscroscopical examinations of the contents of the throat to be made except in cases where a membrane is present. There is not a particle of evidence to show that there was at any time any membrane present in the throat of the deceased child, and, it appearing without dispute that some cases baffle the most skilful diagnosticians, the case at bar may have been such a case, in which event the defendant cannot be held liable for his failure to make a correct diagnosis and consequent failure to properly treat the patient. The law does not require impos-

sibilities, or even the exercise of the very highest degree of skill or the utmost care, but only such reasonable care and skill as is usually possessed by physicians of the same school in the locality. The presence of the membrane not being established, there is no evidence in this case upon which the jury could base a verdict finding that defendant did not exercise ordinary care.

The jury found that the failure of the defendant to exercise ordinary care was the proximate cause of the death of the child. We have carefully examined all the evidence in the case, and there is no evidence which shows or tends to show that the exercise of ordinary care and skill by the defendant in this case would have prevented the child's death. The medical testimony shows conclusively that the result where antitoxin is not administered in the early stages of diphtheria is uncertain, and that no one can say in a given case what the result would be if antitoxin were administered. It appears without dispute that the defendant made a careful and thorough examination of the child more than twenty-four hours after her illness began, in which he was assisted by another physician, and that in order to make the examination thorough and complete the child was given an anesthetic and the cavity of the throat thoroughly explored and that at that time there was no membrane present, and according to the evidence a microscopic or bacteriological examination was not indicated. It is further undisputed that the defendant examined the child on Tuesday evening, the night before her death, and at that time there was no membrane present in the throat. The physicians further agreed that, in the absence of a membrane or other symptoms pointing directly to the presence of the disease, antitoxin should not be administered. The other symptoms were not present in this case. The verdict of the jury to the effect that the failure of the defendant to exercise ordinary care and skill resulted in the death of the child is a mere conjecture and has no founda-

tion, substantial or otherwise, in the evidence. "Verdicts cannot rest in mere conjecture." *Samulski v. Menasha P. Co.* 147 Wis. 285, 133 N. W. 142. It follows that the motion for judgment notwithstanding the verdict should have been granted by the civil court.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to the circuit court to enter judgment for the defendant dismissing the plaintiff's complaint on the merits.