[No. 13094. Department Two. May 17, 1916.]

L. B. HARVEY, *Appellant*, v. T. T. RICHARDSON, *as Administrator etc., Respondent*.[1]

PHYSICIANS AND SURGEONS—ACTION FOR SERVICES—NEGLIGENCE—EVIDENCE—SUFFICIENCY. Where a patient died after an extrahazardous operation and the physician sued to recover for his services, the defense of negligence is not made out merely by showing that no blood test was made before the operation to determine the oxygen carrying power of the blood, there being no attempt to show that the failure to take the blood test contributed to the death, or that such test had ever been made in operations of that character in that vicinity.

SAME—DEFENSES—CONTRACT. In an action by a physician for services in performing an operation, evidence of a remark by plaintiff, after the patient had refused to go to specialists recommended, that if she was willing to take a chance with him, he was willing to take a chance with her, does not raise the inference that plaintiff took the chance of losing the value of his services if the operation was not successful.

SAME. Where a physician, operating for goiter, did not contract to remove it, his right to recover for his services is not defeated by the fact that the operation was not successful.

[1]Reported in 157 Pac. 674.

Appeal from a judgment of the superior court for Stevens county, Jackson, J., entered January 6, 1915, upon the verdict of a jury rendered in favor of the defendant, in an action on contract. Reversed.

*Jesseph & Bourland,* for appellant.

*Rochford & Wilson,* for respondent.

Morris, C. J.—Action by a surgeon to recover for professional services. Verdict and judgment for defendant, and appeal.

Under the pleadings, there was but one issue in the case, the value of the services. The patient was suffering from an exopthalmic goiter and, upon consulting appellant, was advised by him to go to Mayo Brothers, at Rochester, Minnesota, for surgical treatment. Not desiring to do so, the patient and her husband requested appellant to perform the necessary operation. The patient was thereupon sent to the hospital, and in a day or two the operation was undertaken. It progressed until about half of the goiter had been removed, when the patient died.

The respondent, over appellant's objection, introduced evidence that no blood test was taken prior to the operation, and that such a test was usual to determine the oxygen carrying power of the blood, which, if below a given point, renders an operation of this character extra-hazardous. The lower court was of the opinion that this testimony raised a question of negligence, and submitted instructions to the jury upon that theory. We think this was error. There was no evidence that the blood of the patient was below the required oxygen test, nor was there any attempt to show that the failure to take the blood test contributed to any extent to the death of the patient. Before a charge of negligence can be sustained against a physician or surgeon, there must be some evidence that the failure to use proper skill, either in the thing done or in the thing left undone, was the proximate cause of injury to the patient. In other

words, there must be some connection between the act and the result complained of. There was none in this case. The duty of a surgeon is set forth in *Sawdey v. Spokane Falls & N. R. Co.*, 30 Wash. 349, 70 Pac. 972, 94 Am. St. 880, where it is said:

"The contract implied by law from the mere employment of a surgeon is that he will treat the injury he is employed to treat with ordinary diligence and skill. This requires that he bring to its treatment such a degree of skill and diligence as surgeons practicing in the same general neighborhood, in the same line of practice, ordinarily have and exercise in like cases. He must not experiment in his treatment of the injury. On the contrary, if he desire to avoid liability for his mistakes, he must treat it in some method recognized and approved by his profession as most likely to produce favorable results. If there be more than one of these applicable to the particular case in hand, he is not, of course, liable for an honest mistake of judgment in his selection of the method; but if bad results follow, and liability therefor is to be avoided, it must appear that the treatment applied was approved and recognized, as well as that it was pursued with ordinary diligence and skill."

The undertaking of a physician or surgeon is not to cure his patient, nor does he insure that his treatment will be successful. Neither does the failure to perfect a cure evidence want of proper care or skill. It was known before the patient went upon the operating table that she was in a dangerous condition and that the operation would be extra-hazardous. That was the reason she was advised by appellant to seek the aid of Mayo Brothers. Appellant cannot be deprived of the reasonable value of his services because the patient died during the operation, unless there was some evidence that death was the result of some lack of skill on his part. There is no such evidence, nor any attempt to so prove. Respondent contented himself with showing that no blood test was made, leaving the jury to infer that in some way this contributed to the patient's death. Neither was there evidence that such test had ever been made in opera-

tions of this character in that vicinity, although it appears in the record that a number of these operations had been performed in this same hospital.

Respondent urges, in support of the judgment, a remark of appellant to the patient, after he had urged her to go to Mayo Brothers and she had refused, "Well, if you are willing to take a chance with me I will take a chance with you;" contending that, by this language, it was understood the patient took the chance of death and appellant took the chance of losing the value of his services unless the operation was successful. We see no connection between the remark and the inference.

It is next urged that appellant based his right of action upon a contract to remove a goiter, and not having removed it, his right of action failed. There is no evidence of such a contract, and appellant's right of action, under the evidence, cannot be so limited.

Because of the error in submitting the case to the jury, the judgment is reversed and the cause remanded for a new trial.

HOLCOMB, MAIN, PARKER, and CHADWICK, JJ., concur.