SCHULTZ, by guardian *ad litem*, Respondent, vs. TASCHE and another, Appellants.

*November 13, 1917—February 5, 1918.*

*Physicians and surgeons: Malpractice: Contributory negligence: Supervening negligence: Mitigation of damages: Instructions to jury: Reading extracts from opinions: Expert testimony: Harmless errors: Nonsuit.*

1. Where the surgical treatment of plaintiff by defendants in a hospital was negligent and damage resulted to her therefrom, her own subsequent want of care, either in leaving the hospital prematurely or in her conduct after leaving it, which aggravated the damage, does not bar a recovery against defendants but goes only in mitigation of damages; plaintiff's negligence in such case not being contributory negligence, strictly speaking, but subsequent or supervening negligence. *Quinn v. Higgins*, 63 Wis. 664, explained and limited.

2. In such a case, although it is difficult to separate the results of the two negligences, plaintiff should recover only for the damage which resulted solely from defendants' negligence.

3. Trial judges should frame their own instructions to the jury, embodying only so much of the law as is applicable to the facts of the case on trial; and the practice of reading to the jury extracts from the opinions of the supreme court is disapproved.

4. Where the existence of the ultimate fact to be found by the jury, namely malpractice, depended almost exclusively upon expert testimony, which was offered on both sides, and the jury found,

in plaintiff's favor, that there was malpractice, manifestly they did not wholly disregard the expert testimony, and an instruction given by reading an extract from an opinion of the supreme court relating to rejecting such testimony altogether, applicable equally to the expert testimony offered by both parties, was not prejudicial to defendants.

5. Where the right leg of a girl nineteen years old was permanently deformed, shortened an inch and a half, and bowed out, causing pain and lameness, and the jury found that such condition resulted from malpractice by defendants, but also found that plaintiff's own negligence contributed to produce such condition and awarded her but $2,000, errors, if any, in the instructions relative to contributory negligence are *held* not to have been prejudicial to defendants.

6. In an action for malpractice a nonsuit is *held* to have been properly denied as to a defendant who took part in what the evidence tended to show was negligent and unskilful treatment of plaintiff while she was in a hospital and in the premature removal of splints, causing damage to her broken leg, although she left the hospital without his knowledge.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Action for malpractice. October 31, 1915, plaintiff, then about eighteen years of age, fractured the femur of her right leg. She employed the defendants to treat her, and charges that by reason of their negligent and unskilful treatment the ends of the broken bone were not put in apposition but were negligently allowed to override and unite, thus causing a shortening, lameness, weakness, and pain in the leg. The jury found: (1) the defendants failed to use ordinary care and skill as physicians and surgeons in their treatment of the fractured femur of plaintiff's right leg; (2) the injury which she had sustained in the deformity and shortening of her right leg was the natural and probable consequence of the failure on defendants' part to use such ordinary care and skill; (3) there was a failure on plaintiff's part to use ordinary care which contributed to produce the deformity and shortening of her leg; and (4) the damages which she sustained as the natural and probable consequence of defendants'

negligence and want of skill were $2,000. Judgment for plaintiff was entered upon the special verdict, and defendants appealed.

For the appellants there was a brief signed by *Lines, Spooner & Quarles* of Milwaukee and *Charles Voigt* of Sheboygan, and oral argument by *Willet M. Spooner.*

*M. C. Mead* of Plymouth, for the respondent.

The following opinion was filed December 4, 1917:

Vinje, J.    Plaintiff was injured the last day of October and was at once taken to the St. Nicholas hospital in Sheboygan, where she remained under defendants' care and treatment till December 12th, when she went home in an automobile to Plymouth, about fifteen miles distant, and did not return for further treatment.    In answer to the third question of the special verdict the jury found that there was a failure on plaintiff's part to use ordinary care which contributed to produce the deformity in her leg.    It is claimed that this finding bars her right to recovery, and the cases of *Hrubes v. Faber,* 163 Wis. 89, 157 N. W. 519; *Gores v. Graff,* 77 Wis. 174, 46 N. W. 48; *Ewing v. Goode,* 78 Fed. 442; and *Quinn v. Higgins,* 63 Wis. 664, 24 N. W. 482, are cited to sustain the claim.    None of them so hold.    It must be admitted, however, that there is language in the opinion in the *Quinn Case* that, taken in connection with the charge of the trial court to the jury, gives color to the claim.    The court charged the jury in substance that, if plaintiff made any changes in the mode of treatment of his broken leg, then he should notify defendant of such changes at once, and if he failed to do so he could not hold the defendant responsible for any injury resulting from such changes.    So far the charge is in harmony with the law of the state.    He then instructed the jury further, in substance, that if plaintiff negligently or purposely disobeyed proper directions of the defendant he could not recover.    Judgment went for plaintiff upon a general verdict and the defendant appealed.    The question

for decision by the court, so far as the instructions referred to are concerned, was whether they were prejudicial to defendant. The language of the court to the effect that the charge "submitted the question of plaintiff's negligence quite fully and fairly to the jury and that there was no error" must be limited to the precise question before the court, namely, Was there error in it prejudicial to the defendant? So limited and understood the language does not conflict with the later decision of this court to the effect that negligence on the part of a plaintiff in the care of his injury which follows and aggravates negligent treatment by a physician, or aggravation from other causes not due to the physician's treatment, does not bar recovery. In such cases he may recover for the injury resulting from the negligent treatment of the physician, but not for that resulting from his own negligence or from the other aggravating conditions. *Gates v. Fleischer,* 67 Wis. 504, 30 N. W. 674; *Kiekhoefer v. Hidershide,* 113 Wis. 280, 89 N. W. 189; *Wilmot v. Howard,* 39 Vt. 447; *Carpenter v. Blake,* 75 N. Y. 12; *DuBois v. Decker,* 130 N. Y. 325, 29 N. E. 313.

In the present case it is established by the verdict that defendants were negligent in the treatment of plaintiff before she left the hospital and that damage resulted to her from such negligent treatment. Plaintiff's want of care consisted chiefly, if not entirely, in conduct by her after she left the hospital, and perhaps in her leaving prematurely. At any rate, all these acts of hers took place after defendants' negligent treatment was administered. It is not strictly correct to call such later negligence on the part of a patient contributory negligence, though it has been so styled in the books. It is rather subsequent or supervening negligence that aggravates the improper condition due to the physician's prior negligence. The two do not synchronize in producing the injury as they usually do in the ordinary negligence case. The cause of action for the physician's negligence may be

complete and accrue before the negligence of the patient comes in to aggravate the result. When it does occur its consequences go in mitigation of damages, not in bar of the action. *DuBois v. Decker,* 130 N. Y. 325, 29 N. E. 313; *Wilmot v. Howard,* 39 Vt. 447. Upon the question of damages the court instructed the jury that they must distinguish between defendants' negligence, if any, and plaintiff's negligence, if any, or a result due to any other cause than defendants' negligence, and assess damages for the improper result due solely to defendants' negligence. As already stated, this correctly expressed the law on the subject.

The contention that the jury could not distinguish the results between the negligence of the two parties is not without merit. But we apprehend it is no more difficult to separate the results of the two negligences than it often is to determine the results of defendant's negligence alone, or how much money will compensate for a given result in a particular case. Such difficulties are inherent in the subject matter dealt with, and courts and juries must wrestle with and solve them as best they can. In most cases there can be no mathematical or demonstrable certainty arrived at. Reasonable certainty is all the law requires and is all that can usually be attained.

The trial judge read to the jury long extracts from the opinions of this court on the subject of the value of expert testimony, one of which closed with this statement:

"It is for the court or jury to give such evidence just such weight as such court or jury may conclude the same is entitled to. It may be given controlling influence if from the whole case a conclusion is reached that it is entitled to that weight, and it may be rejected altogether if the conclusion is reached that it is not of sufficient weight to influence the result."

Exception is taken to this by counsel for defendants, not because it does not correctly state the general law on the subject, but because it was prejudicial to defendants in this case,

where the establishment of their liability rested wholly on expert testimony.   In such a case it is urged the jury should not be instructed that they may wholly disregard expert testimony.   It must be conceded that the giving of the instruction was not peculiarly applicable to the case in hand.   That is usually apt to be so where extracts from opinions are read, and for that reason the practice has frequently been disapproved of by this court, and attention is again called to the subject to the end that trial judges shall frame their own instructions embodying only so much of the law as is applicable to the facts of the case on trial.   Extracts from the opinions of courts of last resort should not as such be read to the jury.   But we cannot say that the giving of the instructions complained of was error.   The jury were told that it rested in their judgment to determine whether such testimony should be rejected.   Manifestly in a case where the existence of the ultimate fact to be found by them, namely, malpractice, depended almost exclusively upon expert testimony, and where there was such testimony offered on both sides, the jury did not conclude to reject it altogether.   They must have given consideration and weight to it.   And the instruction applied equally to the expert testimony offered by both parties, so it cannot be said that defendants were prejudiced more than plaintiff.

A number of exceptions are urged to instructions given relative to contributory negligence.   These will not be set out separately because in our opinion they are not well taken for two reasons: first, because the jury found contributory negligence, and second, because the damages awarded were so moderate that any error in the charge relative to contributory negligence could not have prejudiced defendants upon the finding as to damages.   Their counsel freely concede that, since the jury found plaintiff guilty of contributory negligence, it is as to their bearing on the latter finding only that they have a right to complain.   The connection between

error in an instruction as to contributory negligence and the amount of damages awarded seems to us quite remote. But if not so, the fact that the jury gave plaintiff—a girl nineteen years of age, whose right leg was shortened an inch and a half, bowed out, caused her pain and lameness, and so far as the evidence discloses will permanently remain in that condition—only $2,000, convinces us that they made adequate allowance for her contributory negligence in mitigation of damages. If the judge inadvertently omitted to enumerate some of her negligent acts in his instructions, as is claimed, the jury evidently remembered them.

A nonsuit was properly denied as to the defendant *Reich*. From the evidence the jury might find that the greater part of the malpractice was complete before plaintiff requested to leave the hospital; that it consisted in a failure to put the ends of the bone in apposition and so retain them till a firm enough union was obtained to prevent them from overriding. There is evidence from which the jury might find the splints were prematurely removed, causing damage. *Dr. Reich* took part in those treatments. The fact that he did not know plaintiff left the hospital is not very significant upon the question of his liability in view of the other evidence in the case.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on February 5, 1918.

OWEN, J., took no part.