**FLOYD et ux. v. MICHIE et al.   (No. 7285.)**

Court of Civil Appeals of Texas. Austin.
Nov. 7, 1928.

A. U. Puckitt and Currie McCutcheon, both of Dallas, for appellants.

Thompson, Knight, Baker & Harris, of Dallas, for appellees.

McCLENDON, J. Floyd and wife sued Dr. Michie and Dr. Griffin in damages for the death of plaintiff's infant son, alleging negligence and want of skill of defendants as attending physicians. The appeal is by plaintiffs from a judgment in favor of defendants upon a directed verdict; and the only issue here is whether there was any evidence that would support recovery.

Plaintiffs' pleadings alleged that the child was taken with impetigo, which was improperly diagnosed and treated as chicken pox, and died from mercurial poisoning as the result of the treatment.

Appellees contend that the evidence fails to establish either of the following essentials to recovery: (1) That Dr. Michie was responsible for the acts of Dr. Griffin. (2) That there was any improper

658

diagnosis, want of skill, or negligence of either physician. (3) That the child in fact died from the alleged cause, mercurial poisoning.

We sustain appellants' contention as to the first two essentials, which renders the third unimportant. With reference to the third, however, we will say in passing that all the expert testimony is to the effect that the child did not die of mercurial poisoning. The only evidence tending to support this allegation is an admission of Dr. Michie, testified by Floyd to have been made to him a few days after the child's death. Since Dr. Michie was not liable for treatment administered by Dr. Griffin, and since the latter was not bound by the admission of the former, we would be inclined to hold that mercurial poisoning was not established. But since this issue is immaterial under our other holdings, we pretermit its further discussion.

We give a brief résumé of the evidence pertinent to our above holdings.

The child, aged two years, ten months, and nine days, died at 4:20 p. m., Saturday, July 3, 1926, at appellants' home in Dallas. Early in June, 1926, the child had tonsilitis, for which it was treated by Dr. Michie, who had been plaintiffs' physician for about seven years. The child's condition had improved, but it had not entirely recovered, when it was taken by its parents to Galveston about June 15th. A day or so later an infection of the inner ear developed, which was treated by a Galveston specialist. During the latter part of this treatment water blisters were discovered around the child's mouth; and on other portions of its face. Mrs. Floyd returned by train to Dallas with the child, arriving on the morning of June 21st. She called Dr. Michie that day. He examined the child, but was unwilling to diagnose or treat the case, so, with Mrs. Floyd's consent (her husband not yet returned from Galveston), he called Dr. Griffin, a reputable skin specialist. The latter examined the child in the evening of June 21st, and gave chicken pox as his preliminary diagnosis. He called again the next day, so as to make a daylight examination, and, according to his testimony (denied by Mrs. Floyd, who testified that he did not change his diagnosis until Tuesday following), gave impetigo contagiosa bullus type as his diagnosis. He gave two prescriptions, a salve and a powder, each to be applied externally and each containing 2 per cent. mercury in the form of calomel. Each physician visited the child several times between June 22d and July 2d. On the latter date, at the suggestion of Dr. Michie, another skin specialist, Dr. Blunt, was called in consultation. He gave the same diagnosis as Dr. Griffin, approved the treatment, advised its continuance, and suggested additionally a tonic, which Dr. Michie at once prescribed. Dr. Griffin again visited the child on the morning of July 3d. About 1 p. m. that day the child developed severe vomiting spells. Dr. Michie was called, but arrived only a few minutes before the child died. He endeavored to summon other physicians, but was unable to do so in time. He administered a strychnine hypodermic.

In addition to Dr. Griffin and Dr. Blunt, who were concededly competent and reputable skin specialists, several other reputable physicians testified that the treatment prescribed by Dr. Griffin was the recognized standard treatment for impetigo. Dr. Blunt and some of the others additionally testified that they would have prescribed a larger percentage of mercury, 5 per cent.; and that the 2 per cent. prescription was low. The only other testimony on this subject was that of an eclectic physician, who gave an altogether different treatment he would prescribe. He did not, however, testify that the treatment prescribed was not the proper and recognized one of the school of medicine to which defendants and the other medical witnesses belonged.

Upon the authority of Moore v. Lee, 109 Tex. 391, 211 S. W. 214, 4 A. L. R. 185, we sustain appellants' following second counter proposition, which disposes of the liability of Dr. Michie: "2. A physician is not liable for the negligence of another independent practitioner whom he (in the exercise of reasonable care) recommends because he is unwilling to assume the responsibility of diagnosing and treating the malady, and whose services are accepted and continued under an independent contract."

We also sustain appellants' fourth, sixth, and seventh counter propositions following, as to both defendants:

"4. The law entertains in favor of a physician the presumption that he has discharged his full duty, and to defeat this presumption the law exacts affirmative proof of breach of duty coupled with affirmative proof that such breach of duty resulted in injury. Negligence is never imputed from results, nor is any inference thereof indulged in against a physician. The plaintiffs' evidence in this case failing to meet the law's requirements, the court properly directed a verdict for the defendants Michie and Griffin." Authorities: Graham v. Gautier, 21 Tex. 120; Ewing v. Goode (C. C.) 78 F. 442; Hrubes v. Faber, 163 Wis. 89, 157 N. W. 519; Cozine v. Moore, 159 Iowa, 472, 141 N. W. 424; Spain v. Burch, 169 Mo. App. 94, 154 S. W. 172; Lorenz v. Booth, 84 Wash. 550, 147 P. 31; Harvey v. Richardson, 91 Wash. 245, 157 P. 674, Ann. Cas. 1918A, 881; McKee v. Allen, 94 Ill. App. 147; Yaggle v. Allen, 24 App. Div. 594, 48 N. Y. S. 827; Phebus 'v. Mather, 181 Ill. App. 274; Bogle v. Winslow, 5 Phila. (Pa.) 136; 30 Cyc. p. 1584; 21 R. C. L. § 36, p. 392.

"6. To warrant the finding of civil malpractice there must be expert medical testi-

mony to establish it 'and to establish the additional fact that death resulted from sucĥ malpractice. There being no expert medical testimony establishing such issues, the court properly instructed a verdict for the defendants." Authorities: Ewing v. Goode, supra; Houghton v. Dixon, 29 Cal. App. 321, 155 P. 128'; Bigney v. Fisher, 26 R. I. 402, 59 A. 72; Wilkins v. Brock, 81 Vt. 332, 70 A. 572; Miller v. Toles, 183 Mich. 252, 150 N. W. 118, L. R. A. 1915C, 595; Phebus v. Mather, supra.

■ "7. The law recognizes that there are different schools of medicine, but it does not favor one recognized school to the exclusion of the others. Therefore the treatment adopted by a physician is to be tested by the principles and practices of his respective school and not by those of another and distinct school. His care and skill cannot be measured by the character of treatment a physician of another school would give." Authorities: Patten v. Wiggin, 51 Me. 594, 81 Am. Dec. 594; McGraw v. Kerr, 23 Colo. App. 163, 128 P. 870; Van Sickle v. Doolittle, 184 Iowa, 885, 169 N. W. 141; Booth v. Andrus, 91 Neb. 810, 137 N. W. 884; State v. Smith, 25 Idaho, 541, 138 P. 1107; 21 R. C. L. § 28, p. 383.

The trial court's judgment is affirmed.

Affirmed.