## DAVIS v. GRISSOM.

### No. 5060.

Court of Civil Appeals of Texas. Texarkana.

March 31, 1937.

Rehearing Denied April 8, 1937.

R. T. Wilkinson, Jr., of Mt. Vernon, and J. H. Beavers, of Longview, for plaintiff in error.

King, Mahaffey & Wheeler, of Texarkana, C. E. Bryson, of Houston, and J. A. Ward, of Mt. Pleasant, for defendant in error.

HALL, Justice.

Plaintiff in error and defendant in error were plaintiff and defendant, respectively, in the trial court, and will be so designated here.

This action was brought by plaintiff in the district court of Titus county against defendant for damages alleged to have been caused by malpractice and negligence of defendant. Plaintiff alleged that on May 13, 1932, he received accidental injuries to his face and head, by a piece of iron about ½ inch thick and about 1½ inches wide being driven through his left cheek bone, "breaking and completely fracturing the molar bone, fracturing and crushing his upper left side of the superior maxilla bone and knocking out some of his upper teeth on the left side, also broke, fractured and lowered the arch bone underneath the left eye"; that the piece of iron when driven through and into his face carried with it parts of his straw hat, parts of the rim of his eyeglasses, and particles of flesh; that by reason of the injury the muscles, ligaments, and tendons of the left side of his face were torn and lacerated; that it became necessary to have immediate medical and surgical aid and that he called defendant, who responded for the purpose of treating plaintiff's wound and injuries; that defendant was negligent and careless in diagnosing and treating plaintiff's wound and injuries in the following particulars: "in this defendant negligently, carelessly and without due regard for plaintiff as his patient, failed and refused to open and cleanse said wounds and to probe for and remove the inanimate or foreign objects or substances therein, but did negligently, carelessly and unskillfully close said wounds, on the left side of his face, without cleaning or removing therefrom fragments of the bone, particles of his hat, eye-glasses and other inanimate objects and substances, then contained in said wounds on the left side of plaintiff's face; that defendant negligently, carelessly and unskillfully failed and refused to set and replace or properly set and replace to their natural position the bones, in the left side of plaintiff's face, which had been broken, fractured, cracked and dislocated by said injuries, and likewise failed to remove the flesh out of the cracks, crevices and fractures of said bones; that defendant likewise failed to make, cause or request to be made, an X-ray examination of plaintiff's said injuries and face in order to properly diagnose said injuries and to discover and locate said inanimate and foreign objects and the dislocations and fractures of said bones."

Plaintiff alleged further that if defendant was not negligent he was wholly incompetent as a physician and surgeon, and that on account of the careless, negligent, and unskillful acts of defendant in treating plaintiff's injuries, certain inanimate objects were allowed to remain in said wounds for a period of time varying from fourteen to sixty-five days; that on account of negligent and unskilled acts of omission and commission on part of defendant in treating said injuries, plaintiff has suffered and sustained injuries as follows:

"(A) That by virtue of said inanimate objects and substances so remaining in his flesh, for the period of time stated, and said bones not being properly set and their loose fragments not being removed, he has suffered and continues to suffer the most intense, severe and terrorizing physical and mental pain and misery.

"(B) That by virtue of the broken arch bone under his left eye not being set or properly set, the sight of said eye has been so impaired that its vision is very limited and has what is known as a 'double vision' which renders said eye almost totally unserviceable.

"(C) That by virtue of the flesh of his face not being removed from the fracture and crevices of the bones and said bones not being properly set and replaced to their natural positions and on account of the gashes and incisions on his face not being properly stitched and treated, his face has been permanently disfigured and he has a large, long, unsightly and permanent scar thereon, together with other scars and disfigurements.

"(D) That by the fractures and dislocation of his upper left jaw bone not being properly treated and set, he has suffered and continues to suffer severe aches and pains of his teeth and to that part of his

jaw bone; that on account of the negligent and unskillful treatment and failure to properly treat said cheek and jaw bone, proper dental treatment cannot now be given his teeth without severe pain and misery to plaintiff and without danger to his health and life."

Plaintiff alleged further that on account of the injuries enumerated above he was rendered incapable for performing manual labor on his farm except for short periods of time without pain in the left side of his face, jaw, and teeth, and that he has double vision in his left eye. He prayed for $10,000 damages.

Defendant answered by general demurrer, special exceptions, and general denial. Trial was to a jury. At the conclusion of plaintiff's testimony defendant made a motion for peremptory instruction which was granted by the court, and judgment was rendered accordingly. From this judgment plaintiff appeals to this court.

Plaintiff relies upon two propositions: (1) That the evidence introduced by plaintiff was "sufficient to raise the issue as to whether defendant was guilty of malpractice and negligence"; and (2) "such evidence was sufficient to raise the issue as to whether such negligent acts of defendant were the proximate cause of the injuries sustained by plaintiff."

The record reveals that plaintiff while plowing in his field with a gee-whiz harrow, his mule ran across a ditch, throwing him forward and on to the harrow, causing his face to strike an iron support of the harrow handles, badly cutting and lacerating the left side of his face. Shortly after the injury defendant was called and promptly responded and treated plaintiff. The evidence offered by plaintiff shows that the defendant first administered two hypodermics, after which he procured some hot water to sterilize his instruments; that defendant used cotton or gauze saturated with a clear liquid and washed the wound. One witness states that defendant examined the wound with aid of a flashlight, while another states that defendant examined the wound with a short probe. After the examination and cleansing, defendant sewed up the wound and placed a bandage over it. There is testimony in the record to the effect that some persons present advised defendant to examine plaintiff's eye and teeth and also called his attention to a piece of straw in the wound, and that defendant stated he would see about it but did not examine them. But, as said before, one witness stated that defendant used a short probe in making an examination into the wound. Another witness testified that defendant was asked whether there were any broken bones in plaintiff's face, to which he replied that he did not think any bones were broken; that it was only a flesh wound and its appearance was caused by swelling. The record shows further that from several days to several weeks after the first treatment by defendant particles of foreign matter came to the surface and were taken out. Plaintiff testified that after his injury he has suffered severe headaches, has double vision in his left eye and can only work for short periods of time; that before his injury he was not afflicted in any wise but was a strong, able-bodied man. He was corroborated in these statements by his wife and neighbors. All the witnesses testified that plaintiff had an ugly scar on the left side of his face, that his left eye was sunken and the left side of his face was lower than the right side, and that this physical condition did not exist before the accident. This, in our opinion, is a fair statement of the facts proved by plaintiff upon which he sought to predicate negligence or malpractice of defendant in his treatment of the wounds. No physician, surgeon, or any person with expert knowledge testified in the case.

Does this evidence show, or tend to show, negligence, malpractice, or unskillfulness on the part of defendant in the treatment of plaintiff's injuries? We think not. There is no evidence in the record that defendant committed any overt act of negligence, nor was there any testimony that the treatment of the wound by defendant was not such as practiced by the average physician and surgeon in that particular locality. Certainly a layman could not say that any particular method of treatment practiced by a physician and surgeon in a given case was proper or improper. No expert evidence was offered to show the proper method of treatment of a wound such as the one in question, nor that the manner of treatment of the same by defendant was improper or unskilful. It is contended that the failure to use an X-ray in the diagnosis of plaintiff was negligence. There is not a word of testimony in evidence that defendant owned an X-ray machine or that one was available in that locality that might have been used by him.

Mr. Chief Justice Taft, when sitting as circuit judge, in his opinion in Ewing v.

Goode (C.C.) 78 F. 442, 443, said: "Before the plaintiff can recover, she must show by affirmative evidence—first, that defendant was unskillful or negligent; and, second, that his want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for the consideration of the jury. The naked facts that defendant performed operations upon her eye, and that pain followed, and that subsequently the eye was in such a bad condition that it had to be extracted, established neither the neglect and unskillfulness of the treatment, nor the casual connection between it and the unfortunate event." For a complete list of cases bearing on this subject, see Lippold v. Kidd, 126 Or. 160, 269 P. 210, 59 A.L.R. 875 et seq.

True, the facts unquestionably show that the physical condition and appearance of the plaintiff has undergone a material change for the worse, but this change is not shown to be other than the natural result of the severe injury plaintiff received when he came violently in contact with the harrow. There is no testimony from any witness, either lay or expert, to the effect that the present condition of plaintiff's face and eye is due in whole or in part to any malpractice, negligent or unskilful acts of defendant in treating said wound.

In a case of this character only expert testimony is legally competent to establish negligence, malpractice, or unskilfulness on the part of defendant, and that said negligence, malpractice, or unskilfulness is the proximate cause of plaintiff's present condition. In the case of Gray v. McDermott, 188 Ark. 1, 64 S.W.(2d) 94, 96, by the Supreme Court of Arkansas, it is said: "The question as to whether or not it was proper or improper for the physicians in charge to open up the wound or probe into it on August 24 or some subsequent time thereto to determine whether or not a vein had been severed by the bullet; and also the question as to whether the physicians were negligent in failing to ligate both ends of the vein on September 3, when the operation was performed, were questions requiring scientific knowledge to determine. It cannot and should not be left to a jury to speculate whether or not the experts in the practice of their profession have pursued the proper course of procedure."

In the case of Phillips v. Wright (Tex. Civ.App.) 81 S.W.(2d) 129, 131, writ dismissed, it is said:

"It is well settled that the law entertains in favor of a physician, or surgeon, the presumption that he has discharged his full duty, and to overcome such presumption the law exacts affirmative proof, both of breach of duty and that such breach resulted in injury. Negligence, in such cases, is never imputed from mere results, nor can any inference of negligence be indulged against a physician, or surgeon, from the results.

"In such a case as we have before us there must be expert medical testimony to establish malpractice, and to further establish the fact that injury resulted from the malpractice. There not only is no expert medical testimony in the record, there is no evidence tending to show that appellant was injured because of appellee's treatment, or his failure to properly treat appellant."

In Barker v. Heaney (Tex.Civ.App.) 82 S.W.(2d) 417, 420, writ dismissed, the court said: "We conclude that there is no expert medical testimony to establish that Barker's death was proximately caused by the negligence or want of proper care and skill on the part of defendants, and therefore sustain defendants' contention that the trial judge should have instructed a verdict in favor of defendants."

To the same effect is Floyd v. Michie (Tex.Civ.App.) 11 S.W.(2d) 657, 658, wherein it is said: " 'The law entertains in favor of a physician the presumption that he has discharged his full duty, and to defeat this presumption the law exacts affirmative proof of breach of duty coupled with affirmative proof that such breach of duty resulted in injury. Negligence is never imputed from results, nor is any inference thereof indulged in against a physician. The plaintiffs' evidence in this case failing to meet the law's requirements. the court properly directed a verdict for the defendants Michie and Griffin.' Authorities: Graham v. Gautier, 21 Tex. [111] 120; Ewing v. Goode (C.C.) 78 F. 442; Hrubes v. Faber, 163 Wis. 89, 157 N.W. 519; Cozine v. Moore, 159 Iowa, 472, 141 N.W. 424; Spain v. Burch, 169 Mo.App. 94, 154 S.W. 172; Lorenz v. Booth, 84 Wash. 550, 147 P. 31; Harvey v. Richardson, 91 Wash. 245, 157 P. 674, Ann.Cas.1918A, 881; McKee v. Allen, 94 Ill.App. 147; Yaggle v. Allen, 24 App. Div. 594, 48 N.Y.S. 827; Phebus v. Mather, 181 Ill.App. 274; Bogle v. Winslow, 5 Phila. (Pa.) 136; 30 Cyc. p. 1584; 21 R.C.L. § 36, p. 392; [Miller v. Toles, 183 Mich. 252, 150 N.W. 118, L.R.A.1915C, 595]."

 Thus we conclude that the trial judge was correct in granting the peremptory instruction for the reason that there was no evidence in the record to establish either that defendant was guilty of malpractice, negligence, or was unskilful, or that said alleged malpractice, negligence, or unskilfulness was the proximate cause of plaintiff's present condition.

The judgment is affirmed.