

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00094-CV

_____

DR. JAMIE SINGLEY; DDS DENTURES & IMPLANT SOLUTIONS;
AFFORDABLE DENTURES & IMPLANTS, FORT WORTH P.A.; AFFORDABLE
DENTURES & IMPLANTS, TEXAS PLLC; AND DDS DENTURES AND
IMPLANTS, Appellants

V.

GREG STAATS, Appellee

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-334018-22

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellee Dr. Jamie Singley performed a dental-implant procedure on Appellant Greg Staats, and soon thereafter, Staats developed a fever. He sought treatment from his primary care physician, and later, he reported his fever to Dr. Singley. But according to Staats, Dr. Singley "refused" to examine him. Less than forty-eight hours after this alleged "refus[al]," Staats went to the hospital and was diagnosed with a liver abscess.

Staats sued Dr. Singley, along with Dr. Singley's dental practice (DDS Dentures and Implant Solutions) and several related dental-implant companies (collectively, Dr. Singley). To comply with the Medical Liability Act (MLA), Staats served Dr. Singley with two expert reports.[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Both reports allege that Dr. Singley's postoperative failure to examine

---

[1] The MLA applies to health care liability claims brought against dentists for injury or death proximately caused by their breach of professionally accepted standards of care. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10) (defining "[h]ealth care"), (a)(12)(A)(ii) (defining "[h]ealth care provider" to include "a dentist"), (a)(13) (defining "[h]ealth care liability claim"). And the dental-implant surgery specifically performed by Dr. Singley is a List A Procedure subject to the MLA's informed-consent and disclosure requirements. *See id.* §§ 74.101–.107; 25 Tex. Admin. Code Ann. § 601.2(u)(4)(B) (2023) (Tex. Med. Disclosure Panel, Procedures Requiring Full Disclosure of Specific Risks and Hazards—List A) (listing risks inherent in dental-implant surgery subject to disclosure for informed-consent purposes). Accordingly, as a predicate to prosecuting his health care liability claim against Dr. Singley, the MLA required Staats to serve one or more expert reports setting forth, individually or in combination, the prima facie basis for his claim. *See Ransom v. Eaton*, 503 S.W.3d 411, 411–12 (Tex. 2016) (applying MLA's expert-report requirement to health care liability claim alleged against dentist); *see also Gormley v. Stover*, 907 S.W.2d 448, 449–50 (Tex. 1995) (applying MLA's statute of limitations for health care liability claims to claim against dentist for postoperative negligence).

Staats breached the standard of care.  Dr. Singley moved to dismiss based on the reports' inadequacy on causation, but the trial court denied the motion.

Because neither of Staats's expert reports identifies how or why Dr. Singley's alleged breach of the standard of care—her alleged postoperative refusal to examine Staats—caused or worsened Staats's liver abscess or resulted in any other damage, we will reverse and remand.

## I.  Background

On June 16, 2020, Dr. Singley performed a dental-implant procedure on Staats. The next day, Staats developed a high fever.  At the time, COVID-19 was a significant public health concern, but according to Staats, he tested negative for COVID-19.

About a week later, on June 23, Staats consulted his primary care physician, who diagnosed him with a "viral syndrome" and treated him with various medications.  Staats's fever persisted, so after another week, Staats returned to his primary care physician and was treated with additional medication for what was still believed to be a "viral syndrome."

Around that same time, on June 29, Staats contacted Dr. Singley and reported his fever.[2]  The parties dispute how Dr. Singley responded.  According to Staats, Dr. Singley "refused to examine him" out of a fear of contracting COVID-19, and she

_____

[2]It is unclear whether Staats returned to his primary care physician before or after contacting Dr. Singley on that date.

3

instead referred him back to his primary care physician. Dr. Singley contends she saw him.[3]

Within forty-eight hours of this alleged "refus[al]" and referral,[4] Staats went to the emergency room, where he was diagnosed with and treated for a liver abscess.[5]

Staats sued Dr. Singley for dental malpractice based on Dr. Singley's alleged failure to diagnose his condition and failure to treat his postoperative complications, among other things. Staats then served Dr. Singley with two expert reports pursuant to the MLA. *See id.*

---

[3]One of Staats's expert reports indicates that he "present[ed] to [Dr. Singley's] office" but was "advi[sed] . . . to see a physician" and "[n]o examination [was] conducted." The other expert report indicates that Staats "called" Dr. Singley and that an "initial appointment was offered and then retracted[,] and he was referred to see his primary [care] physician." In her briefing, Dr. Singley, "strongly disputes that she did not see the patient."

[4]Staats's pleadings and expert reports differ in the number of days that passed between Staats's conversation with Dr. Singley and his presentation at the hospital. Staats's live petition alleges that, after contacting Dr. Singley, he went to the emergency room "[t]he next day," but one of his expert reports indicates that he went to the hospital two days later.

[5]An "abscess" is "a localized collection of pus surrounded by inflamed tissue." *Abscess*, Merriam-Webster's Medical Dictionary (2016). Staats's live petition alleges that he had sepsis, but his expert reports do not mention or discuss this. *See Jackson v. Kindred Hosps. Ltd. P'ship*, 565 S.W.3d 75, 86 (Tex. App.—Fort Worth 2018, pet. denied) (describing sepsis as an infection in the blood); *Cunningham v. Haroona*, 382 S.W.3d 492, 500, 514 (Tex. App.—Fort Worth 2012, pet. denied) (same). Similarly, Staats's trial court pleadings and appellate brief repeatedly mention a severe infection. His expert reports, though, talk in terms of Staats's liver abscess, which was Staats's "admitting diagnosis" at the hospital. Neither expert explains the relationship between an infection generally, sepsis specifically, and a liver abscess.

4

In Staats's expert reports, Dr. James Melville and Dr. David Witt[6] opine that Staats's liver abscess was "[p]ossibl[y]" or "likely related to the dental procedure" and that "Dr. Singley's refusal to see and examine Mr. Staats after [the] procedure . . . fell below the standard of care."

Dr. Singley moved to dismiss under the MLA, arguing that the expert reports were inadequate because, among other things, they failed to explain the causal connection between Dr. Singley's breach—i.e., her alleged refusal to conduct a postoperative examination of Staats—and Staats's injury. *See id.* § 74.351(b), (r)(6). Staats, though, claimed that the reports described how Dr. Singley "abandoned [her] patient from treating him postoperatively for a condition caused by the dental procedure." After a hearing, the trial court denied Dr. Singley's dismissal motion. Dr. Singley appeals. *See id.* § 51.014(a)(9).

## II. Governing Law and Standard of Review

Under the MLA, a claimant asserting a health care liability claim must serve each health care provider with a timely, adequate expert report early in the proceedings. *See id.* § 74.351(a); *Baty v. Futrell*, 543 S.W.3d 689, 692 (Tex. 2018). If the report is untimely or inadequate, then upon the defendant's motion, the trial court

---

[6]Dr. Melville is a dental surgeon, and Dr. Witt is a physician who is board-certified in infectious diseases and internal medicine. The experts' qualifications are not at issue in this appeal; although Dr. Singley criticizes such qualifications in a footnote of her brief, the issue is not presented for our review.

must dismiss the claim.[7]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b), (*l*); *Baty*, 543 S.W.3d at 692–93.

An expert report is inadequate if "it appears to the [trial] court, after hearing, that the report does not represent an objective good faith effort to comply with the [MLA's] definition of an expert report."  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*).  The MLA's definition of an expert report, in turn, requires "a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."  *Id.* § 74.351(r)(6); *see Baty*, 543 S.W.3d at 693–94 (noting that expert report must "inform[] the defendant of the specific conduct called into question and . . . provid[e] a basis for the trial court to conclude the claims have merit").

In addressing "the causal relationship," Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6), the expert report "must explain, based on facts set out in the report, how and why [the health care provider's] breach [of the standard of care] caused the injury."  *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 459–60 (Tex. 2017) (quoting *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015)).  Causation "has two components: (1) foreseeability and (2) cause-in-fact."  *Id.*

---

[7]If the report is inadequate, the trial court may grant a 30-day extension to allow the claimant to cure the deficiency.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).

at 460 (quoting *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013)). For the latter component (cause-in-fact), the expert must clarify why, "absent the act or omission—i.e., but for the act or omission—the harm would not have occurred." *Id.* (italics removed) (quoting *Rodriguez-Escobar*, 392 S.W.3d at 113). "A bare expert opinion that the breach caused the injury will not suffice." *Van Ness*, 461 S.W.3d at 142.

A trial court's ruling on the adequacy of an expert report is reviewed for an abuse of discretion. *Id.*; *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010).

## III. Discussion

In a single appellate issue, Dr. Singley contends that Staats's expert reports do not adequately address causation, so the trial court abused its discretion by denying the motion to dismiss. We agree.

The expert reports do not identify any damage—physical, financial, or otherwise—caused by Dr. Singley's alleged postoperative negligence. The only damage Staats's expert reports discuss is his liver abscess. But both Dr. Melville and Dr. Witt state that the liver abscess "was very likely related to [Staats's] dental procedure"[8]—not Staats's postoperative care. Neither expert claims that Dr. Singley

---

[8]Neither expert explains the causal link between the dental-implant procedure and the liver abscess; the reports merely note the abscess's temporal proximity to the dental procedure and state that abscesses are "well recognized" postoperative complications of dental surgery. Without such an explanation, a "well recognized" postoperative complication may simply represent a risk inherent in the procedure that occurs without the presence of negligence. *See Felton v. Lovett*, 388 S.W.3d 656, 662

negligently performed the implant procedure that allegedly caused the liver abscess. Rather, they state that Dr. Singley's negligence came later, a couple of weeks after the implant procedure, when she "deviated from the standard of care required for a postoperative patient in [her] refusals to evaluate Mr. Staats."[9]

Staats attempts to solve this issue by lumping the implant procedure together with Dr. Singley's postoperative care and treating both as a single incident—a single incident that, in his view, caused the liver abscess. But Staats cannot reverse the sands of time. Again, under Staats's own theory of the case, the source of his liver abscess predated Dr. Singley's alleged negligence by approximately two weeks. And but-for causation necessitates that the cause (i.e., the negligence) occurs prior to the injury. If the injury is already in place before the negligent action is taken, then it cannot be said

(Tex. 2012) ("Inherent risks of treatment are those which are directly related to the treatment and occur without negligence."). "Negligence is never imputed from results, nor is any inference thereof indulged in against a physician." *Kaster v. Woodson*, 123 S.W.2d 981, 982–83 (Tex. App.—Austin 1938, writ ref'd) (quoting *Floyd v. Michie*, 11 S.W.2d 657, 658 (Tex. App.—Austin 1928, no writ), and holding that a physician's liability for infectious postoperative complications may not be inferred from their temporal proximity to the procedure in question but must be established by expert medical testimony describing both the source and the mechanism of the infectious process and its causal relationship with the treatment in question); *see Ft. Worth & R.G. Ry. Co. v. McMurray*, 173 S.W. 929, 931–32 (Tex. App.—Fort Worth 1914, writ ref'd) (rejecting expert medical testimony attributing decedent's fatal liver abscess to unsanitary ditch water when experts testified to several "theoretically supposable possibilities" that could have causally linked abscess to water—e.g., malaria or typhoid fever—but experts gave no "definite, positive opinion" regarding abscess's cause).

[9]We note that Staats's own postoperative conduct suggests that he did not think the dental-implant procedure was the source of his fever because he did not contact Dr. Singley concerning his symptoms until well after he had already sought treatment from his primary care physician.

that "absent the [negligent] act or omission . . . the harm would not have occurred." *Columbia Valley Healthcare*, 526 S.W.3d at 460 (quoting *Rodriguez-Escobar*, 392 S.W.3d at 113, and summarizing cause-in-fact).

This is not to say that postoperative negligence could not have contributed to the liver abscess, worsened the abscess, or caused related damage. And, though not Staats's primary argument, he alludes to this possibility as well. He emphasizes that Dr. Singley "fail[ed] to treat and diagnose" his liver abscess despite his "deteriorating condition," which we liberally construe as arguing that Dr. Singley's negligence allowed him to deteriorate further. *See* Tex. R. App. P. 38.9.

Yet, Staats's expert reports do not address how Dr. Singley's examination of him on June 29 would have lessened the damage his liver abscess inflicted. In such cases—when "the allegations are that a patient, who had a pre-existing condition [before the alleged negligence], would have experienced a better outcome had earlier diagnosis or treatment been undertaken"—"[t]he need to explain the causal connection between breaches of the standards of care and the claimed injury or death is particularly acute." *Northcutt v. Stephens*, No. 02-21-00217-CV, 2022 WL 60720, at *4 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.) (mem. op.) (holding expert report inadequate).

Here, Dr. Singley's alleged refusal to examine Staats delayed his diagnosis and treatment by, at most, two days; he spoke to Dr. Singley on June 29, and on July 1, he went to the hospital and received treatment. Neither Dr. Melville nor Dr. Witt

9

explains what damage occurred between June 29 and July 1 that Dr. Singley could have prevented. *See Ngo v. Lewis*, No. 09-10-00140-CV, 2010 WL 3518225, at *3 (Tex. App.—Beaumont Sept. 9, 2010, no pet.) (mem. op.) (holding expert report inadequate when provider allegedly delayed tests and specialist consultation but expert report did not explain how treatment or result would have been different if tests and consultation had occurred earlier); *Taylor v. Fossett*, 320 S.W.3d 570, 577 (Tex. App.— Dallas 2010, no pet.) (holding expert report inadequate when expert did not explain "the impact of the alleged 48-hour delay in re-evaluation of [the patient] on the nature and severity of the underlying infection nor in what manner the infection developed or changed in that period of time necessitating surgery that otherwise would not have been required"); *Jones v. King*, 255 S.W.3d 156, 160 (Tex. App.—San Antonio 2008, pet. denied) (mem. op.) (holding expert report inadequate and noting that expert "d[id] not attempt to explain how [the patient's medical bills and other damages] would not have occurred if the diagnosis of meningitis had occurred 48 hours earlier"); *cf. Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 224–26 (Tex. 2018) (holding expert report adequate when expert opined that failure to properly assess patient's medical history delayed diagnosis of spinal injury which "allowed the spinal injury to progress to the point of paraplegia").

In fact, Dr. Witt's report seems to indicate that delaying the diagnosis of Staats's liver abscess did not result in any damage. Although Dr. Witt criticizes Staats's primary care physician's treatments—describing such treatments as "not

10

mak[ing] much sense"—Dr. Witt states that these nonsensical treatments "delayed an accurate diagnosis and potentially confused the bacterial culture diagnosis, [but that] fortunately no other harm was done." So if, as Staats claims, his primary care physician's failure to accurately diagnose his postoperative condition delayed treatment for approximately two weeks but caused "no other harm," then it is difficult to understand what harm Staats alleges Dr. Singley caused by delaying his treatment for two days.

The primary care physician's involvement raises another complicating factor that Staats's expert reports do not address. When Staats reported his fever to Dr. Singley, his symptoms were already being treated (albeit allegedly nonsensically) by his primary care physician. Neither Dr. Melville nor Dr. Witt explains why the standard of care required Dr. Singley to intervene in Staats's treatment when Staats's fever was already being treated by another health care provider.[10]

In short, Staats's expert reports provide no explanation of how or why the outcome would have been different if Dr. Singley had examined Staats on June 29. *See Karkoutly v. Guerrero*, No. 13-17-00097-CV, 2017 WL 6379795, at *3–4 (Tex.

_____

[10]Staats repeatedly states that he was "abandoned" by Dr. Singley, but patient abandonment requires, among other things, the provider's severance of the relationship without providing sufficient notice or the opportunity for the patient to obtain adequate alternative medical care. *T.L. v. Cook Child. Med. Ctr.*, 607 S.W.3d 9, 56 (Tex. App.—Fort Worth 2020, pet. denied) (listing elements of patient-abandonment claim). Dr. Singley referred Staats to his primary care physician, and although Dr. Witt asserts that "[a] referral to a primary [care] physician for a potential medical problem is not a resolution for [a] dental complication," neither he nor Dr. Melville explains why the referral was inadequate.

11

App.—Corpus Christi–Edinburg Dec. 14, 2017, no pet.) (mem. op.) (concluding similarly and holding expert report inadequate when patient alleged doctor was negligent in delaying exploratory surgery); *see also Columbia Valley Healthcare*, 526 S.W.3d at 460 (noting that expert report must address but-for causation). The reports do not "represent an objective good faith effort" to summarize "the causal relationship"; the trial court abused its discretion by concluding otherwise and by denying Dr. Singley's motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b), (*l*), (r)(6). We sustain Dr. Singley's sole issue.

## IV. Conclusion

Staats's expert reports are inadequate under the MLA, so we reverse the trial court's order denying Dr. Singley's motion to dismiss. *Id.* But because the deficiencies in Staats's expert reports are not so overwhelming that a valid explanation "would be impossible," the trial court must be given the opportunity to consider whether to dismiss Staats's case with prejudice or to grant Staats an extension.[11] *Columbia Valley Healthcare*, 526 S.W.3d at 461 (concluding that, because expert report's deficiencies were curable, "[t]he trial court . . . must be given the opportunity to consider an extension"); *Karkoutly*, 2017 WL 6379795, at *4 (similar, quoting *Columbia Valley Healthcare*); *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (authorizing trial court to grant 30-day extension to cure expert-report deficiencies). We thus remand

---

[11]Staats did not request an extension in the trial court, but he hints at his desire for one on appeal. *Cf. Northcutt*, 2022 WL 60720, at *1 n.2, *4 (remanding for consideration of extension despite claimants' failure to request one).

12

the case to the trial court for further proceedings consistent with this opinion. *See* Tex. R. App. P. 43.2(d).

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: August 31, 2023